**Elzora MILLER, Plaintiff,**

v.

**KANSAS POWER & LIGHT COMPANY, Defendant.**

**Civ. A. No. 82–4195.**

United States District Court, D. Kansas.

April 26, 1984.

T.L. Green, Jerry K. Levy, Janet Jo Smith, Topeka, Kan., for plaintiff.

Steven R. Carr, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

O'CONNOR, Chief Judge.

In this lawsuit, plaintiff claimed that she was denied equal pay for equal work in violation of the Equal Pay Act of 1963 and of Title VII of the Civil Rights Act of 1964. The Equal Pay Act claim was tried before a jury, and the Title VII claim was tried before the court, commencing February 27, 1984. On March 1, 1984, the jury returned a verdict finding that the defendant, Kansas Power & Light Co. (KP & L), had violated the Equal Pay Act. The jury also found that KP & L's violation was not "willful." Plaintiff's Title VII claim was

taken under advisement by the court. The court now makes the following findings of fact and conclusions of law.

## Findings of Fact

Plaintiff, a white female, has been employed by defendant KP & L since July 1957. Although plaintiff's job classification has changed over the years, she presently holds the position of "stenographer." During all relevant times, plaintiff has performed duties as executive secretary to the superintendent of the Topeka division of KP & L.

Plaintiff's duties include typing, filing, answering the phone, preparing reports requiring some simple mathematical calculations, managing a petty cash fund, and performing other clerical responsibilities. Plaintiff works in an office in KP & L's office building located at Second and Jackson, in Topeka, Kansas.

During much of the time plaintiff has been employed, KP & L also employed two males, Edmund Anderson and William Wallace, in the position of "record clerks." The duties of the record clerks included typing, filing, and answering the telephone. In addition, Wallace, but not Anderson, kept an inventory of meters returned to the central meter shop, and performed mathematical calculations to verify the accuracy of the meters. The two record clerks worked in an office down the hall from plaintiff's office in the KP & L building at Second and Jackson in Topeka.

During all relevant times, record clerks have been and are paid a higher wage than plaintiff.

In July of 1978, plaintiff and several other female employees complained to the Department of Labor that KP & L was violating the Equal Pay Act. The Department of Labor conducted an investigation and found violations as to two other female employees, but found no violation as to plaintiff. (Defendant's Exhibit G.) Plaintiff complained to the Department of Labor again in January of 1979. On July 1, 1979, plaintiff's file was transferred to the Equal Employment Opportunity Commission (EEOC), in accordance with the Executive Reorganization Plan No. 1 of February 23, 1978, 43 Fed.Reg. 19807. (Plaintiff's Exhibit 10.) On July 27, 1981, plaintiff submitted a formal charge to the EEOC, alleging that she had been denied equal pay for equal work because of her sex. (Plaintiff's Exhibit 14.) The charge was received by the EEOC on August 3, 1981. Plaintiff subsequently received a right-to-sue letter, and filed this lawsuit on August 6, 1982.

In November 1979, Wallace was promoted from record clerk to a supervisory position, creating an opening for a record clerk. This vacancy was posted and bids were received by defendant KP & L. Plaintiff did not bid for the vacant record clerk position. In December of 1979, another female employee, Lois Sumner, assumed the vacant record clerk's position. Sumner worked with and received the same wages as the remaining record clerk, Anderson, until March of 1983, when Anderson was transferred to a position as a meter tester. Since that time, Sumner has been the only person employed as a record clerk.

## Conclusions of Law

Defendant KP & L is an "employer" within the meaning of 42 U.S.C. § 2000e(b), and is therefore subject to Title VII's prohibition of gender-based discrimination in employment. 42 U.S.C. § 2000e-2(a)(1).

Title VII prohibits sex-based discrimination in compensation. Because such discrimination may also be actionable under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), it has consistently been held that the two statutes are in *pari materia* and must be construed in harmony with one another. *E.g., Gunther v. County of Washington*, 623 F.2d 1303, 1309 (9th Cir. 1979), *aff'd*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); *DiSalvo v. Chamber of Commerce*, 568 F.2d 593, 596 (8th Cir. 1978); *Ammons v. Zia Company*, 448 F.2d

117, 119 (10th Cir.1971); *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 266 (3d Cir.), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). Consequently, courts considering Title VII equal pay claims have looked to Equal Pay Act cases for guidance. *Gunther, supra*, 623 F.2d at 1309.

■ Congress specifically considered the interrelation of the two statutes when it enacted the "Bennett Amendment" to Title VII, now codified at 42 U.S.C. § 2000e–2(h). The Bennett Amendment provides:

> It shall not be an unlawful employment practice under this subchapter [Title VII] for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of § 206(d) of Title 29." 42 U.S.C. § 2000e–2(h).

The meaning of this amendment was clarified by the United States Supreme Court in *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). There, the Court held that the amendment merely extended the protection of the four affirmative defenses of the Equal Pay Act to Title VII actions for sex-based wage discrimination and so did not preclude recovery on a claim of discriminatory compensation although the jobs were found not to be substantially equal. In so holding, the Court "recognized that very different principles govern the standard structure of Title VII litigation, including burdens of proof, and the structure

of Title VII litigation implicating the 'factor other than sex' exception to an equal-pay claim." *Kouba v. Allstate Insurance Co.*, 691 F.2d 873, 875 (9th Cir.1982). Although the Court did not express an opinion as to how a Title VII equal pay case should be structured, 452 U.S. at 171, 101 S.Ct. at 2249, it implied that the traditional burden-shifting analysis of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), does not govern Title VII actions for sex-based wage discrimination. Accordingly, lower courts have held that a plaintiff in a Title VII equal pay action has the initial burden of proving that the employer paid different wages to employees of the opposite sex for work that was "substantially equal" (in terms of skill, effort, and responsibility) to that of plaintiff, and which was performed under similar working conditions. *See, e.g., Ammons v. Zia Co., supra; Lanegan-Grimm v. Library Association of Portland*, 560 F.Supp. 486 (D.Or.1983). Once the plaintiff has stated a *prima facie* case, the burden of *proof* shifts to the defendant to establish that the wage differential resulted from a factor other than sex or to prove the existence of one of the three other affirmative defenses. *Kouba v. Allstate Insurance Co., supra*, 691 F.2d at 875; *Lanegan-Grimm, supra*, 560 F.Supp. at 489. This same analysis should be applied to claims under the Equal Pay Act. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *EEOC v. Central Kansas Medical Center*, 705 F.2d 1270 (10th Cir.1983).[1]

---

1. We note that this conclusion is not entirely consistent with our instructions to the jury regarding plaintiff's claim under the Equal Pay Act. Instruction No. 5 charged the jury in part as follows:

> FIFTH: Plaintiff must prove that the distinction in pay rates was based on sex, or that she has been discriminated against on the basis of her sex. In other words, plaintiff must show that she has been paid less because she is a woman. In determining this issue, you may consider all the evidence in the case.
>
> In summary, to prevail on her claim in this case, plaintiff must prove (1) that Kansas

Power and Light Company is an employer subject to the Equal Pay Act; (2) that plaintiff and members of the opposite sex have been employed by Kansas Power and Light Company doing substantially equal work on jobs the performance of which requires substantially equal skill, effort, and responsibility; (3) that the jobs are performed under similar working conditions; (4) that the plaintiff has been paid a lower wage than members of the opposite sex doing equal work; and (5) that plaintiff has been paid less because of her sex.

We thus required the jury to expressly find that plaintiff was paid a lower wage because of her

Plaintiff contends that the jury's verdict on her Equal Pay Act claim should be given collateral estoppel effect on her Title VII equal pay claim, citing *Johnson v. University of Bridgeport*, 20 F.E.P. Cases 1766 (D.Conn. 9/13/79). We do not reach the question of the applicability of collateral estoppel, because we reach the same conclusion as did the jury.

■ The plaintiff was at all times paid a lower wage than the male record clerks, Wallace and Anderson. This disparity continued at least until March 1983, when the last remaining male record clerk, Anderson, assumed a new job. The wage disparity was not cured by hiring a female, Sumner, as a record clerk. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 207, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *EEOC v. Central Kansas Medical Center, supra*, at 1273.

Plaintiff performed work substantially equal to that performed by one of the male record clerks, Anderson. Although defendant presented evidence indicating that the other record clerk, Wallace, frequently performed tasks requiring greater skill and responsibility than those performed by plaintiff, we do not regard that as controlling. Plaintiff need not prove that she performed work equal to every male record clerk. She need only show that her job was substantially equal to *some* job in the more highly paid record clerk category. *See EEOC v. Central Kansas Medical Center, supra*, at 1273; *Thompson v. Sawyer*, 678 F.2d 257, 275 (D.C.Cir.1982).

The evidence indicates that while Anderson and Wallace held the same job title and received the same wage, Wallace performed additional tasks requiring much greater skill and responsibility, including keeping an inventory of meters and determining the accuracy of the meters. Anderson's duties were essentially clerical: typing and filing records; and answering the telephone. Plaintiff's duties were of a similar nature. We conclude that plaintiff's job required skill, effort, and responsibility substantially equal to that required of and performed by Anderson.

Plaintiff and the record clerks performed their jobs under similar working conditions. Plaintiff and the record clerks worked in offices on the same floor of the KP & L building at Second and Jackson in Topeka, Kansas. KP & L presented no evidence indicating that the record clerks' surroundings were dissimilar to those of plaintiff. Neither plaintiff nor the record clerks were subjected to any physical hazards in their jobs.

We conclude that plaintiff has stated a *prima facie* case that she was denied equal pay for equal work because of her sex, in violation of Title VII. The burden thus shifts to defendant to prove the existence of one of the four affirmative defenses under the Equal Pay Act, made applicable to Title VII by 42 U.S.C. § 2000e–2(h). *See County of Washington v. Gunther, supra*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751.

sex. Judging from the jury's questions to the court, this requirement caused some difficulty during deliberations. The jury eventually returned a verdict in favor of plaintiff, finding that plaintiff had satisfied this requirement.

In our subsequent research, however, we have discovered no authority to support our earlier conclusion that a plaintiff under the Equal Pay Act must prove that the wage differential was because of her sex. Rather, it appears from the structure of the statute, particularly its establishment of an affirmative defense for wage differentials based on a "factor other than sex," that proof of unequal pay for substantially equal work under similar working conditions implicitly proves sex-based discrimination *unless* the defendant proves otherwise. Therefore, we now believe that our instruction requiring the jury to find that KP & L paid plaintiff a lower wage because of her sex was improper. Because the jury found that plaintiff had proved even this added element, however, we need not disturb the verdict.

Defendant's primary defense at trial was that the jobs were not substantially equal. Although this defense was arguably a claim that the wage differential was based on some factor other than sex, we did not treat it as an affirmative defense because it merely rebutted the equal work element on which the plaintiff had the burden of proof.

■ By way of defenses, KP & L contends that the pay differential was not based on sex, but existed because plaintiff's job and the position of record clerk were not substantially equal. As we noted before, KP & L's evidence on this point focused on duties performed by one record clerk, Wallace, and not by the other, Anderson. An employer may not avoid a finding of unequal pay for unequal work "by classifying some men's jobs that are substantially equal to the women's jobs with other men's jobs that are not." *EEOC v. Central Kansas Medical Center, supra*, at 1273 (citing *Thompson v. Sawyer*, 678 F.2d at 275). It is enough that the plaintiff demonstrated that her job was substantially equal to that of Anderson.

As additional evidence that the pay differential was based on a "factor other than sex," defendant points out that in December of 1979, the first record clerk opening in many years was filled by a woman, Sumner. This, defendant argues, proves that plaintiff was not discriminated against on the basis of her sex. We disagree.

■ An employer cannot "cure" a practice of sex-based discrimination in compensation by opening the higher paying job to women. *EEOC v. Central Kansas Medical Center, supra*, at 1273. Instead, "'[t]he lower wage rate must be increased to the level of the higher.'" *Corning Glass Works, supra*, 417 U.S. at 207, 94 S.Ct. at 2234 [quoting H.R.Rep. No. 309, 88th Cong. 1st Sess., 3 (1963)].

The evidence clearly supports the inference that at least prior to Sumner's hiring as a record clerk, the disparity between the wage paid to plaintiff and the wage paid to Anderson was the result of sex-based discrimination. In addition, there was evidence that two other female employees whose duties resembled those of a record clerk even more closely than did plaintiff's, were paid less than the male record clerks until the Department of Labor determined that those disparities violated the Equal Pay Act.

■ We conclude that KP & L has failed to prove that the difference between the wage paid to plaintiff and the wage paid to the male record clerks was based on a "factor other than sex." In fact, a preponderance of the evidence in this case indicates that, as the jury found, plaintiff was paid a lower wage because of her sex. Accordingly, we hold that plaintiff is entitled to recover on her Title VII claim.

■ We turn now to the matter of an appropriate remedy. First, we consider the remedy for KP & L's violation of the Equal Pay Act. Because the violation was not willful, plaintiff is entitled to recover back pay for the period beginning two years prior to the commencement of this lawsuit. 29 U.S.C. § 255(a). Thus, under the Equal Pay Act, plaintiff is entitled to back pay for the period commencing August 6, 1980. In light of the history of the wage disparity in this case, we cannot conclude that the present wage differential between plaintiff and Sumner is due to differences in their respective jobs. Accordingly, we believe that plaintiff is entitled to back pay from August 6, 1980, to the present date. Plaintiff's Exhibit 5 indicates that this amount is approximately $10,967.00. The exact amount should be determined and agreed to by counsel and reflected in the final journal entry of judgment.

■ In addition, in an action under the Equal Pay Act, a prevailing plaintiff is entitled to an additional equal amount as liquidated damages. 29 U.S.C. § 216(a). If, however,

the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Equal Pay Act], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in § 16 of such Act. [29 U.S.C. § 216].

29 U.S.C. § 260.

In such an instance, the matter of liquidated damages is within the discretion of the court. In the case before us, there was evidence that a Department of Labor investigation in 1978 revealed no equal pay violation with respect to plaintiff and that defendant, in good faith, relied upon this determination. We conclude that defendant had reasonable grounds for its failure to comply with the Equal Pay Act and that defendant acted in good faith. Accordingly, we decline to award liquidated damages in this case.

We turn now to plaintiff's remedy under Title VII. Because the two statutes provide different remedies, a plaintiff may recover under both Title VII and the Equal Pay Act if the requirements of each are satisfied and if the plaintiff "does not reap overlapping relief for the same wrong." *Laffey v. Northwest Airlines*, 567 F.2d 429, 445 (D.C.Cir.1977) *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). Under Title VII, a prevailing plaintiff is entitled to back pay for the period beginning two years prior to the filing of a charge with the EEOC. 42 U.S.C. § 2000e–5(g). Plaintiff contends that she is entitled to back pay commencing in July of 1976, which was two years before she first complained to the Department of Labor. In the alternative, plaintiff maintains that the back pay period should commence in October of 1977, two years prior to the date her file was forwarded to the EEOC by the Department of Labor.

■ We believe that the appropriate date for commencing the back pay period can be easily determined in light of the relevant statutory provisions. Subsection (g) of 42 U.S.C. § 2000e–5 provides that "[b]ack pay liability shall not accrue from a date more than two years prior to the filing of a charge with the commission." Subsection (b) provides that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the commission requires." Although plaintiff complained to the Department of Labor as early as July 1978, she did not file a formal "charge" with the EEOC until she was requested to do so in July of 1981. Plaintiff's formal charge was received, and presumably filed, by the EEOC on August 3, 1981. Therefore, the plaintiff is entitled to back pay commencing on August 3, 1979. In order to prevent an overlapping with the Equal Pay Act award, however, plaintiff's back pay under Title VII will be limited to the period between August 3, 1979 and August 5, 1980, inclusive. *See Laffey v. Northwest Airlines*, 374 F.Supp. 1382, 1386 (D.D.C.1974), *aff'd in part, vacated and remanded in part on other grounds*, 567 F.2d 429, 454, 458, 467 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

■ The court is also of the opinion that in order to remedy the history of disparity in wages paid to the plaintiff, KP & L must raise plaintiff's wage to that presently paid for the position of record clerk. Although no males presently hold the position of record clerk and the job performed by Ms. Sumner might not be substantially equal to that performed by plaintiff, it appears that the existing difference between the wages for the two positions is a remnant of a sex-based compensation system. Our purpose is simply to put plaintiff in the position she would occupy absent discrimination. In the future, defendant is free to raise the wage paid for the record clerk position to a level above that paid to plaintiff, provided that the resulting differential is not based on sex.

IT IS THEREFORE ORDERED that counsel prepare, circulate, and submit a final journal entry of judgment in accordance with this opinion.