Lynda FALLON, et al.,
Plaintiffs–Appellees,

v.

STATE OF ILLINOIS,
Defendant–Appellant.

No. 87–2533.

United States Court of Appeals,
Seventh Circuit.

Argued May 18, 1988.
Decided Aug. 15, 1989.

William D. Frazier, Office of Ill. Atty. Gen., Chicago, Ill., for defendant-appellant.

Walter S. Clifton, Urbana, Ill., for plaintiff-appellees.

Before WOOD, Jr., and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

Lynda Fallon sued the State of Illinois under the Equal Pay Act and Title VII of the Civil Rights Act of 1964.[1] Following a bench trial, the district court found that the jobs of Veterans Service Officer ("VSO") and Veterans Service Officer Associate ("VSOA") (currently all VSOs are males and all VSOAs are females) were substantially equal within the meaning of the Equal Pay Act, 29 U.S.C. § 206(d), that female VSOAs were paid less than the male VSOs, and that no factors other than sex justified the pay differential. Based on that finding, the district court concluded that the State of Illinois violated the Equal Pay Act and Title VII, 42 U.S.C. § 2000e *et seq.* with respect to the plaintiff Fallon, and Title VII with respect to the class of VSOAs. The State appeals the Equal Pay Act claim, contending that the trial court's "substantially equal" finding was clearly erroneous, that there was a valid factor other than sex justifying the pay disparity (a requirement that VSOs be wartime veterans), and that in any event, liquidated damages were inappropriate. The State also argues that the district court failed to make a finding of intentional discrimination as to the Title VII claims; and that instead it improperly relied on its Equal Pay Act finding to find Title VII liability. We affirm in part but must reverse and remand as to two issues.

I.

The Illinois legislature created the Department of Veterans Affairs ("Department") to provide various services to veterans. Ill.Ann.Stat. ch. 126½ ¶ 67 (Smith–Hurd 1989). The Department is organized into four divisions: Metro; Northern; Central; and Southern. The Department maintains field offices throughout the state to assist veterans and veterans' spouses, surviving spouses, and dependents in obtaining any benefits due under any laws (federal, state, or local) by reason of the veteran's military service. *Id.* There are fifty-five field offices. Most field offices are staffed by both a VSO and a VSOA.

By statute, VSOs must be wartime (our term) veterans.[2] The VSO job description provides that VSOs, under general supervision, are to manage the field office in preparing and presenting veterans' benefit claims, and perform other necessary services for veterans or their dependents. Most VSOs additionally have what is called itinerant field service duty (14 field offices have no such duties), which means they visit veterans hospitals and prisons, if they exist in the assigned area, and speak to veterans groups at those locations. VSOs are encouraged to actively participate in and join any veterans groups, e.g., the American Legion, and Veterans of Foreign Wars. The VSO in the Champaign field office was Ronald Menaugh.

Fallon was the VSOA in the Champaign field office. Initially, Fallon was hired as a Clerk Typist II in 1969. In 1975, she became a VSOA when the State created the VSOA position. The VSOA job description

---

1. Fallon's amended complaint included a count alleging a violation of Title VII, which was later certified as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. A class of approximately fifty-five VSOAs (with nine choosing to opt out) were the plaintiffs in the Title VII class action claim. However, a class proposed by Fallon with respect to the Equal Pay Act count was rejected by the district court for failing to satisfy the Equal Pay Act's class action requirements, e.g., proper written consent by each proposed plaintiff. 29 U.S.C. § 216(b).

2. Ill.Ann.Stat. ch. 126½ ¶ 69 (Smith–Hurd) provides that:

   A service officer [VSO] shall be assigned to each field office. He must be an honorably discharged veteran from service in the Armed Forces of the United States. He must have served during either the Spanish–American War, World War I, World War II, the national emergency between June 25, 1950 and January 31, 1955, or during the period beginning January 1, 1961 and ending on a date determined by the United States Congress as the end of the hostilities in Viet Nam.

provides that VSOAs, under the "general supervision of the [VSO]" will assist in preparing and presenting veterans' benefits claims, are "responsible for serving veterans independently," and are to "work[ ] independently in offices located throughout the State."

Both the VSO and the VSOA are under the supervision of a Veterans Service Officer Supervisor ("Supervisor"). There are five such Supervisors throughout the state. They generally visit each field office in their respective regions every four to six weeks to answer questions and solve problems. Supervisors evaluate the work of both VSOs and VSOAs.

The district court found that VSOs and VSOAs "do virtually the same work." Both interview veterans and veterans' dependents regarding benefit claims. Both assist putative claimants in completing forms for assorted benefits (e.g., medical, disability). And both type and answer the telephone. In short, the court stated, they "both do interviews; they both fill out forms; [and] they both do clerical work." And although some VSOs were required to perform itinerant work, the trial court found that the work done outside the office was virtually identical to the work done in the office. The court also dismissed the State's arguments that VSOs had added responsibility and ultimately were accountable for their respective field office's operation. Relatedly, the court found that VSOs had no authority to hire, fire, discipline, or evaluate VSOAs. Based on these findings, the district court held the VSO and VSOA jobs were substantially equal, and that no factors other than sex (the State proffered wartime veteran status and education, but presses only the former), existed to warrant the salary disparity between the positions. Accordingly, the district court held the State violated both the Equal Pay Act (as to Fallon) and Title VII (as to both Fallon and the class).

## II.

A. Equal Pay Act *Prima Facie* Case

The Equal Pay Act provides in part:

> No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....

29 U.S.C. § 206(d)(1).

■ To establish a *prima facie* case under the Equal Pay Act, a plaintiff must show: (1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974); *Epstein v. Secretary, United States Department of the Treasury*, 739 F.2d 274, 277 (7th Cir.1984). To succeed, a plaintiff "must establish, based upon 'actual job performance and content—not job titles, classifications or descriptions that the work performed ... is substantially equal.'" *EEOC v. Mercy Hospital and Medical Center*, 709 F.2d 1195, 1197 (7th Cir.1983) (quoting *Gunther v. County of Washington*, 623 F.2d 1303, 1309 (9th Cir. 1979), *aff'd*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981)). The work need not be identical; it is sufficient if the duties are "substantially equal." *Epstein*, 739 F.2d at 277.

Whether two jobs require equal skill, effort, and responsibility, and are performed under similar working conditions is a factual determination. *EEOC v. Madison Community Unit School District No. 12*, 818 F.2d 577, 581 (7th Cir.1987). We can overturn that finding, then, only if it is clearly erroneous. *Id.; Mercy Hospital*, 709 F.2d at 1198. Which is to say we will not reverse the district court unless, after reviewing all of the evidence, we are "left with the definite and firm conviction that a mistake has been made." *Epstein*, 739 F.2d at 278, (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Due regard shall be given the trial court's opportunity to judge the credibility of witnesses. Fed.R.Civ.P. 52(a). When findings are based on credibility determinations, "Rule 52(a) demands even greater deference to the trial court's findings...." *Anderson,* 470 U.S. at 575, 105 S.Ct. at 1512.

■ " 'The crucial finding on the equal work issue is whether the jobs to be compared have a "common core" of tasks, i.e., whether a significant portion of the two jobs is identical.' " *Brewster v. Barnes,* 788 F.2d 985, 991 (4th Cir.1986) (quoting *Brobst v. Columbus Services International,* 761 F.2d 148, 156 (3d Cir.1985)). If a plaintiff establishes this "common core," the question then becomes whether any additional tasks make the jobs " 'substantially different.' " *Brewster v. Barnes,* 788 F.2d at 991. Significantly, the State in effect admits that the core functions performed by VSOs and VSOAs (e.g., interviews, completing forms, and clerical work) are the same. This is hardly surprising, though, given the fact that three VSOs, including Menaugh, testified that VSOs did exactly the same work as VSOAs—a probative fact in establishing a *prima facie* case. *See EEOC v. Maricopa County Community College District,* 736 F.2d 510, 514 (9th Cir.1984).

Nevertheless, the State claims the positions are not substantially equal because the VSOs perform itinerant work, and have greater responsibility and accountability. The State points to Menaugh's infrequent itinerant work,[3] his membership in various veterans' organizations, his additional "re-sponsibilities," and differences in the way the two positions are evaluated. These additional tasks or differences, however, do not make the VSO and VSOA jobs so substantially different as to establish clear error by the district court.

The district court rejected VSO itinerant work as a distinguishing factor, and we cannot say that was clearly erroneous. The district court acknowledged that VSOs, and occasionally Menaugh, did this work. Nonetheless it found this slight difference unpersuasive as a distinction between the jobs. Several factors support this conclusion. First of all, not all VSOs were required to do itinerant work; Menaugh was among those not so required. Even more significant, the district court found that VSOs who did perform itinerant duties did virtually the same work outside the office as they did inside it. That is, itinerant work involved traveling to another location to do exactly the same work as that done in the field office—work which was substantially equal to that performed by VSOAs. The mere fact that some travel was required does not override the court's conclusion that the work was substantially the same. Further, the State appears to exaggerate the importance of the VSOs' "responsibility" to make sure the field office would open and close on time when the VSO was absent due to his itinerant work. Differences in responsibility must be substantial; to argue that *"any* difference in supervisory responsibility renders jobs unequal" is "manifestly incorrect as a matter of law." *Laffey v. Northwest Airlines Inc.,* 740 F.2d 1071, 1083–84 (D.C.Cir.1984) (per curiam), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 951 (1985); *see also EEOC v. Maricopa County Community College District,* 736 F.2d at 514 (minor differences in responsibility do not

---

3. The State in passing complains that the district court wrongly admitted into evidence testimony of other VSOAs regarding Fallon's Equal Pay Act claim. It apparently challenges the relevance of any other VSOA's job or office situation to Fallon's individual Equal Pay Act claim. The State, though, does not say whether it objected to the admission of this evidence in the district court, and the record does not reveal any such objection. Thus, any objection has been waived on appeal; and admitting this evidence was not plain error in any event. *Zayre Corp. v. SM & R Co., Inc.,* 882 F.2d 1145 at 1151 (7th Cir.1989). Moreover, it cannot escape mention that when it suits the State's purpose, e.g., the itinerant work issue; the State readily cites to evidence regarding offices and VSOs unconnected with Fallon's office.

make the Equal Pay Act standard inapplicable).

The State next points to what it contends are additional responsibilities required of VSOs. As an example, it says all complaints regarding the field office were channeled to the VSO. This, the State argues, shows the VSO was in charge of and accountable for the field office. It may show something along those lines, but the fact remains that the district court found (and the State doesn't challenge this finding), that the Supervisor actually managed the field office. The State's position is further undermined by Menaugh's testimony that he had no managerial role whatever. *Cf. EEOC v. Maricopa County Community College District, supra.* Moreover, VSOs had no authority to hire, fire, discipline, or evaluate VSOAs. *See Hodgson v. American Bank of Commerce,* 447 F.2d 416, 422 (5th Cir.1971). *Cf. Hill v. J.C. Penney Co., Inc.,* 688 F.2d 370, 373–74 (5th Cir.1982) (even when male "supervisor" had authority to hire and evaluate, his input on evaluations was minimal; thus supervisory designation held "illusory"). *Compare Usery v. Richman,* 558 F.2d 1318, 1321 (8th Cir.1977) (differences in responsibility supported by the fact that male employee had authority to make effective recommendations regarding discipline). Given the VSOs almost complete lack of control over VSOAs, it strains credibility to say VSOs were responsible or accountable for the field office's smooth operation.

The district court also noted that there was nothing to managing a two-person office, or at least this two-person office. *See Hill v. J.C. Penney Co., Inc.,* 688 F.2d at 373 (in finding that male employee had no real supervisory authority, court observed that the office was only two-person office). While this might not be universally true, it certainly was here. As just mentioned, the VSO virtually had no supervisory authority over the VSOA. Indeed, as the district court noted, the VSO and VSOA both were evaluated by the Supervisor who managed the office. And the fact that VSOs kept track of sparse office supplies (if indeed VSOs did that—Menaugh testified he had

no authority to purchase additional supplies) is not a meaningful distinction.

The State also observes that VSOs and VSOAs were evaluated on different criteria; VSOs tending to be judged on supervisory ability, and VSOAs being judged on clerical acuity. This possibly could be a factor favoring the State, if it were not for some minor hitches. First, the State says Menaugh was rated on his leadership and subordinate development "presumably with regard to Ms. Fallon, his only subordinate." Given the fact that the State is the employer here, it is baffling that it does not know with certainty who Menaugh led and developed, if anyone; we won't presume anything, the State should know and had ample opportunity to establish it. Second, and more important, the State in its zeal to discount as merely clerical Fallon's self-described job objectives (contained on her prior evaluations), overlooks the fact that Menaugh, on at least two prior evaluations, listed identical "clerical" objectives ("upgrading files"). (Plaintiff's Exhibit 25—Menaugh's evaluations for 1975–76, 1976–77.)

Finally, the State contends that VSOs were required to join veterans groups for which the VSO was qualified. The testimony on this point was equivocal, however. Menaugh stated he was not required to join such groups, although he did join on his own. Another VSO (Daniel A. Thies) stated that when initially hired, he did not join any of these groups. But Judy Moore, the Department's Manager of Administrative Services, testified that new VSOs were required to join veterans groups. The district court found that while membership in veterans groups was encouraged, it was not required. Given the divergent evidence and the district court's opportunity to observe the witnesses, we cannot say the district court's choice was clearly erroneous.

In short, the evidence the State points to on appeal does not leave us with the "definite and firm conviction" that the district court mistakenly concluded the VSO and VSOA jobs were substantially equal.

## B. State's Affirmative Defense Under the Equal Pay Act

■ Once a plaintiff establishes a *prima facie* case under the Equal Pay Act, the burden of proof shifts to the employer to show that the pay disparity is due to: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. 29 U.S.C. § 206(d)(1)(i)-(iv); *see also Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. at 2229. These are affirmative defenses on which the employer bears the burden of proof (persuasion). *Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. at 2229.

The fourth affirmative defense (any other factor other than sex) is a broad "catch-all" exception and embraces an almost limitless number of factors, so long as they do not involve sex. *Corning Glass Works*, 417 U.S. at 197, 94 S.Ct. at 2229; *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1261 (7th Cir.1985); 1 A. Larson, L. Larson, *Employment Discrimination* § 31.21, p. 7–81 (1988). It prevents courts and administrative agencies from substituting their judgment for the employer's judgment and avoids unnecessary disruption of bona fide job evaluation systems. *See County of Washington v. Gunther*, 452 U.S. 161, 171, 101 S.Ct. 2242, 2249, 68 L.Ed.2d 751 (1981); *Patkus v. Sangamon–Cass Consortium*, 769 F.2d at 1261. Our review of this defense, then, necessarily is limited. This circuit, for example, does not require that the factor other than sex be related to the requirements of the particular position in question, or that it be a "business-related reason[ ]." *Covington v. Southern Illinois University*, 816 F.2d 317, 321, 322 (7th Cir.), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 101 (1987). Instead, we ask only whether the factor is discriminatorily applied or if it causes a discriminatory effect.[4] *Id.* at 322.

The factor other than sex must also be bona fide. In other words, an employer cannot use a gender-neutral factor to avoid liability unless the factor is used and applied in good faith; it was not meant to provide a convenient escape from liability. *See Goodrich v. International Brotherhood of Electrical Workers*, 712 F.2d 1488, 1493–94 n. 11 (D.C.Cir.1983). In *Brewster v. Barnes*, 788 F.2d 985, for example, the employer claimed as a factor other than sex a job requirement that employees spend over 50 percent of their time performing certain tasks. Although the requirement apparently was gender-neutral, the court nevertheless rejected it as a defense because the employer never attempted to determine whether the female plaintiff met the requirement despite numerous requests that it do so. Thus, even without evidence that the factor was being discriminatorily applied, it was fair to conclude it was not being applied in good faith.

■ The State asserted that the pay differential between VSOs and VSOAs was based on the VSO's wartime veteran status; that is, VSOs are required by statute to be wartime veterans, Ill.Ann.Stat. ch. 126½ ¶ 69, and that accounts for the difference in pay. *Cf. Riordan v. Kempiners*, 831 F.2d 690, 699 (7th Cir.1987) (operation of the State of Illinois civil service rules

---

4. It is not clear whether a discriminatory effect, or disparate impact, caused by the factor other than sex negates the factor. *Covington* seems to suggest it would by including the "discriminatory effect" language. *See also EEOC v. Aetna Insurance Co.*, 616 F.2d 719, 726 (4th Cir.1980). However, in *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1127 (7th Cir.1987) and *American Nurses' Association v. State of Illinois*, 783 F.2d 716, 723 (7th Cir.1986), this court interpreted *County of Washington v. Gunther*, 452 U.S. 161, 171, 101 S.Ct. 2242, 2249, as assuming that a disparate impact, or discriminatory consequence of a rule not having a discriminatory motivation, would *not* be a ground for challenging a practice within the scope of the Bennett Amendment to Title VII (the last sentence in 42 U.S.C. § 2000e–2(h)). The latter view seems to find support in cases such as *Lorance v. AT & T Technologies, Inc.*, — U.S. —, —, 109 S.Ct. 2261, 2265, 104 L.Ed.2d 961 (1989) (under 42 U.S.C. § 2000e–2(h), a seniority system cannot be an unlawful employment practice even if the system has discriminatory consequences); and it would be consistent with the broad reading given the catch-all defense. *Patkus v. Sangamon–Cass Consortium*, 769 F.2d at 1261. We need not decide this issue at this juncture, though, because we must remand on the affirmative defense issue, as is more fully discussed below.

was a valid factor other than sex). The State argues that wartime veteran status is much like preferring (and rewarding) experience, which is perfectly permissible and a valid affirmative defense under the Equal Pay Act. *See Covington v. Southern Illinois University*, 816 F.2d at 323 n. 9. Employers may prefer and reward experience, believing it makes a more valuable employee, for whatever reason. *See, e.g., Piva v. Xerox Corp.*, 654 F.2d 591, 599–601 (9th Cir.1981); *Marshall v. Aetna Insurance Co.*, 487 F.Supp. 717, 724 (E.D.Va.1978). And it is not our province to second-guess employers' business judgment. *County of Washington v. Gunther*, 452 U.S. at 171, 101 S.Ct. at 2249. The State believes that wartime veterans will have a special camaraderie with other veterans, making it more likely that veterans needing the Department's aid will open up to the VSO, when they otherwise might not do so. The shared experience of military service during a time of war is thus critical, the State argues. This seems eminently reasonable. There can be few experiences even remotely similar to having served one's country during wartime. If applied in good faith and in a nondiscriminatory manner, we believe wartime veteran status can be a legitimate factor other than sex. 29 U.S.C. § 206(d)(1)(iv).

The district court, however, flatly rejected this defense, apparently concluding that it failed as a matter of law. The court conclusively held that "[t]he single fact that [VSOs] are veterans and the [VSOAs] are not cannot justify the higher wages paid to the [VSOs]. *Grove v. Frostburg National Bank*, 549 F.Supp. 922, 940 (D.Md.1982)." The trial court's citation to *Grove* is unilluminating. There, the district court held that the employer bank could not justify the higher salary it paid a male bank teller by claiming it was a reward for his prior military service. *Id.* at 934. Importantly, the court was willing to assume that a reward for veteran status could be a valid factor other than sex. *Id.* The problem, though, according to the court, was that the male employee had been drafted into military service while the plaintiff women could not have been draft-

ed. *Id.* That is the extent of the court's analysis; and we are left to guess at what it really means. If it meant that military service pursuant to the draft was not a valid factor other than sex because it caused a discriminatory consequence, the court's rationale is questionable. *Cf. County of Washington v. Gunther*, 452 U.S. at 171, 101 S.Ct. at 171; *Colby v. J.C. Penney*, 811 F.2d at 1127; *American Nurses' Ass'n*, 783 F.2d at 723.

But regardless of what was meant, *Grove* is inapplicable to this case, at least on the record before us. There is nothing in the record showing that VSOs were all beneficiaries of a draft excluding women, or that the wartime veteran status factor had a discriminatory effect. Even if there was a draft which excluded women, *Rostker v. Goldberg*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), though, that doesn't necessarily mean that women were excluded from military service altogether. The statute required only that VSOs be wartime veterans. Ill.Ann.Stat. ch. 126½ ¶ 69. This could include women as well as men. *Cf. Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 275, 99 S.Ct. 2282, 2294, 60 L.Ed.2d 870 (1979). In fact, at one time there was a female VSO who was a veteran. (Tr. 230–31.) Moreover, large numbers of males (both nonveterans and peacetime veterans) are likely to be excluded by the statute's eligibility requirement. *Id.*

The district court prematurely rejected the State's asserted affirmative defense that the VSO's requisite wartime veteran status was a factor other than sex justifying the pay differential. Under proper circumstances, as outlined above, we believe this can be a valid factor other than sex. Accordingly, we must remand the case to the district court for appropriate findings on this issue.

### III.

■ The next issue must be addressed in the event that, on remand, the district court holds the State violated the Equal Pay Act. The question is whether liability under the Equal Pay Act leads automatical-

ly to Title VII liability. (The converse unquestionably is true: a successful affirmative defense to an Equal Pay Act claim likewise serves as a valid defense to a claim based on Title VII. *Patkus v. Sangamon–Cass Consortium,* 769 F.2d at 1260 n. 5.) Here, the district court made no express finding of discriminatory intent on the Title VII claims. Instead, it reasoned that because the "proof required by Title VII is essentially the same proof as required by the Equal Pay Act" liability could be established under Title VII (for both Fallon and, apparently, the class) on the basis of Fallon's successful Equal Pay Act claim.[5] Because we decide that the two acts are distinct and ultimately require different proof (as well as different allocations of the burden of proof), we must remand to the district court for more findings regarding the State's discriminatory intent, as required by Title VII.

Under Title VII, in all but a few cases, *e.g., Price Waterhouse v. Hopkins,* —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the burden of proof remains with the plaintiff at all times to show discriminatory intent. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256–58, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981). In contrast, "the Equal Pay Act creates a type of strict liability in that no intent to discriminate need be shown." *Patkus v. Sangamon–Cass Consortium,*

769 F.2d at 1260 n. 5.[6] As discussed above, under the Equal Pay Act, a plaintiff bears the burden of proving a *prima facie* case. If successful, the burden of proof (persuasion) shifts to the defendant to prove that the wage disparity is attributable to one of that Act's four affirmative defenses. *Corning Glass Works,* 417 U.S. at 195, 94 S.Ct. at 2228. Thus, the risk of nonpersuasion rests with the employer on the ultimate issue of liability. Under Title VII, a plaintiff bears the burden of proof at all times. But when a plaintiff establishes a *prima facie* case, the burden of *production* shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. If that is done, the plaintiff must then prove the proffered reason is a pretext for discrimination. The risk of nonpersuasion, then, is always (except for a few exceptions) on a Title VII plaintiff.

Despite these important differences, some courts hold that Equal Pay Act liability automatically establishes Title VII liability, virtually ignoring the differences between the acts concerning both proof and the allocation of the burden of proof. *See Floyd v. Kellogg Sales Co.,* 841 F.2d 226, 229 n. 2 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988); *McKee v. Bi–State Development Agency,* 801 F.2d 1014, 1018–19 (8th Cir.1986); *Kouba v. Allstate Insurance Co.,* 691 F.2d 873, 875 (9th Cir.1982); *Gunther v. County of*

**5.** In the Equal Pay Act portion of its opinion, the district court stated "[i]n addressing the question of whether the defendant has shown that the differential in pay is due to any factor other than sex, the court concludes that there are no factors other than sex which give rise to the differential in pay." Continuing, the court stated "[t]he defendant has not put forth any legitimate justification for the pay differential and has not met its burden in proving that the differential in pay is due to any factor other than sex." Read broadly, the district court's statements could be said to have found that sex was the reason for the pay disparity. But we do not think such a reading is warranted. The district court was referring to the State's failure to meet its burden of proof under the Equal Pay Act; that is not the same thing as Fallon proving discriminatory intent. *See EEOC v. Madison Community Unit School District No. 12,* 818 F.2d at 588; *Brewster v. Barnes,* 788 F.2d at 993 n. 13; *Grove v. Frostburg Nat'l Bank,* 549 F.Supp. at 938 n. 10; *see also McCormick on Evidence*

§ 336 p. 947 (3d ed. 1984). At any rate, because we remand on the affirmative defense issue, the court's conclusion may change as to the validity of the affirmative defense. Finally, the trial court seems to have awarded class-wide relief pursuant to the Equal Pay Act (ordering the State to increase the compensation of *all* VSOAs to the VSO level), when it had already declined to certify an Equal Pay Act class. This bolsters our view that there was some confusion at the district court level.

We also decline Fallon's invitation to find for ourselves discriminatory intent. We leave it to the district court in the first instance to perform this task. This especially is so when other related issues must be considered on remand.

**6.** Obviously, though, there is a good deal of overlap between the two acts. *See* C. Sullivan, *The Equal Pay Act of 1963: Making and Breaking a Prima Facie Case,* 31 Ark.L.Rev. 545, 545–47 (1978).

*Washington,* 623 F.2d 1303, 1319 (9th Cir. 1979) (supplemental opinion denying rehearing), *aff'd,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751; *Ammons v. Zia Co.,* 448 F.2d 117, 119 (10th Cir.1971); *Parker v. Burnley,* 693 F.Supp. 1138, 1150 (N.D. Ga.1988); *Denny v. Westfield State College,* 669 F.Supp. 1146, 1155–56 (D.Mass. 1987); *Miller v. Kansas Power & Light Co.,* 585 F.Supp. 1509, 1512 (D.Kan.1984); *Melani v. Board of Higher Education,* 561 F.Supp. 769, 781 n. 20 (S.D.N.Y.1983); *Futran v. RING Radio Co.,* 501 F.Supp. 734, 740 (N.D.Ga.1980).[7] The Equal Employment Opportunity Commission also seems to advocate this position. 29 C.F.R. § 1620.27 (1988).

On the other side of the fence, some courts have not abandoned the distinctions between Title VII and the Equal Pay Act, choosing instead to analyze each claim independently, even if brought together on the same underlying facts. *See Peters v. City of Shreveport,* 818 F.2d 1148, 1154 n. 3 (5th Cir.1987), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 1101–02, 99 L.Ed.2d 264 (1988); *Brewster v. Barnes,* 788 F.2d at 993, 993 n. 13; *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1136 (5th Cir.1983); *EEOC v. Sears, Roebuck & Co.,* 628 F.Supp. 1264, 1328–32 (N.D.Ill.1986), *aff'd on other grounds,* 839 F.2d 302 (7th Cir. 1988); *Crockwell v. Blackmon–Mooring Steamatic, Inc.,* 627 F.Supp. 800, 806 (W.D.Tenn.1985); *Grove v. Frostburg Nat'l Bank,* 549 F.Supp. at 938 n. 10.

This court has not yet squarely addressed the issue. *Riordan v. Kempiners,* 831 F.2d at 695; *EEOC v. Madison Community Unit School District No. 12,* 818 F.2d at 588. (In the latter case, we also observed that the First Circuit was doubtful of, or at least not fully convinced by, the cases equating the Equal Pay Act and Title VII, citing *Marcoux v. State of Maine,* 797 F.2d 1100, 1105–06 (1st Cir. 1986).) In *Covington v. Southern Illinois*

*University,* 816 F.2d at 321, apparently we treated the two claims as the same regarding their respective burdens of proof. Importantly, however, the employer in *Covington* successfully defended on the ground that a factor other than sex explained the pay disparity; thus no matter how the claims were treated, neither the Equal Pay Act claim nor the Title VII claims could have succeeded. *Patkus v. Sangamon–Cass Consortium,* 769 F.2d at 1260 n. 5. So the *Covington* court did not have to decide the precise issue we face today, and we think *Covington* is perfectly compatible with our decision here. We are not persuaded by the reasoning of any of those courts which have equated the two statutes; thus, we will continue to adhere to the traditional analysis of Title VII claims, namely, that a plaintiff bears the burden of proof to show discriminatory intent.

The decisions in *Parker,* 693 F.Supp. at 1150; *Melani,* 561 F.Supp. at 781 n. 20; and *Futran,* 501 F.Supp. at 740, offer no independent reasoning in support of their conclusions. In *Miller,* 585 F.Supp. at 1512, the district court explained its decision by noting that the Supreme Court in *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, had "implied that the traditional burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), does not govern Title VII actions for sex-based wage discrimination." We disagree. In fact, the Court expressly declined to reach the issue, stating "we do not decide in this case how sex-based wage discrimination litigation under Title VII should be structured under the fourth defense of the Equal Pay Act...." *County of Washington v. Gunther,* 452 U.S. at 171, 101 S.Ct. at 2249. *See also id.* at 166 n. 8, 101 S.Ct. at 2246 n. 8.

In *Ammons v. Zia Co.,* 448 F.2d 117, an action under Title VII, the court deter-

---

**7.** Fallon cites *Laffey v. Northwest Airlines,* 567 F.2d 429, 445 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), for the proposition that a violation of the Equal Pay Act is a violation of Title VII. The court did not go that far in *Laffey,* though. It said only

that "the same set of facts may form the basis for redress under both Title VII and the Equal Pay Act." *Id.* at 445. Although doubtless this may be true in some cases, it does not speak to the relative burdens of proof or different standards of proof in the respective statutes.

mined that the Equal Pay Act's burden of proof scheme applied to a sex-based wage discrimination claim under Title VII, reasoning that the two acts served the same fundamental purpose, were "in pari materia," and were not to be interpreted in a way "which by virtue of § 703(h) would undermine the Civil Rights Act." *Id.* at 119. But as true as these propositions might be, they do not support radically altering Title VII's burden of proof scheme. Applying the traditional burden-shifting analysis in Title VII cases, *e.g., McDonnell Douglas v. Green,* does not allow § 703(h), 42 U.S.C. § 2000e–2(h), to undermine Title VII; and the *Ammons* court did not explain how this would result.[8] Treating the causes of action as related but distinct still allows them to serve their respective purposes; it just means that a plaintiff suing under Title VII may have a little tougher road than under the Equal Pay Act, but that is no reason to transform the separate causes of action into one claim. We see no reason why this class of case—sex-based wage discrimination—deserves special treatment under Title VII as distinct from race, color, religion, or national origin cases. *See Price Waterhouse v. Hopkins,* —— U.S. at ——, 109 S.Ct. at 1806 (O'Connor, J., concurring) ("It would be odd to say the least if the evidentiary rules applicable to Title VII actions were themselves dependent on the gender or skin color of the litigants").

The Ninth Circuit's decision in *Kouba v. Allstate Insurance,* 691 F.2d 873, is no more persuasive. *Kouba* itself doesn't explain why the employer should bear the burden of proof of showing that a wage differential resulted from a factor other than sex. Instead, it relies on its prior opinion in *Gunther v. County of Washington,* 623 F.2d 1303, 1319, *aff'd on other grounds,* 452 U.S. 161, 101 S.Ct. 2242. There, the Ninth Circuit held simply "[t]he incorporation of the fourth affirmative defense into Title VII makes clear that once a Title VII plaintiff has shown that she was denied equal pay for equal work, the burden shifts upon the employer to prove that the differentiation was based on some factor other than sex." *Gunther v. County of Washington,* 623 F.2d at 1319. *See also Denny v. Westfield State College,* 669 F.Supp. at 1155–56.

We do not think the Ninth Circuit's conclusion follows so clearly from the Bennett Amendment.[9] In *American Nurses' Association v. State of Illinois,* 783 F.2d at 723, we explained the Bennett Amendment differently:

> [T]he Supreme Court in *Gunther* assumed without quite deciding that the Bennett Amendment allows an employer charged (necessarily under Title VII rather than the Equal Pay Act) with paying unequal wages for unequal work to defend by showing that the inequality is based on something other than sex, even if the result is a disparate impact. See 452 U.S. at 171, 101 S.Ct. at 2249.

There was nothing said in regard to reallocating the burden of proof under Title VII. Rather, the Bennett Amendment's impact likely is limited to situations where, in a Title VII action, an employer asserts as a legitimate and nondiscriminatory reason a reason which happens also to cause a disparate impact. According to our decision in *American Nurses' Ass'n,* the Bennett Amendment would seem to preclude liability in such a case.

The court in *Denny v. Westfield State College, supra,* relying on *Kouba v. Allstate Insurance Co.,* stated, after observ-

---

**8.** Notably, *Ammons v. Zia Co.* preceded the Supreme Court's decisions in *McDonnell Douglas v. Green,* and *Texas Dept. of Community Affairs v. Burdine,* both of which clarified the burden of proof allocation under Title VII.

**9.** The Bennett Amendment to Title VII provides: It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensa-

tion paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29 [i.e., the Equal Pay Act affirmative defenses]. 42 U.S.C. § 2000e–2(h). For a discussion of the legislative background of the Bennett Amendment, see *County of Washington v. Gunther,* 452 U.S. at 171–76, 101 S.Ct. at 2249–51; *See also EEOC v. Sears, Roebuck & Co.,* 628 F.Supp. at 1330 n. 88.

ing that the Bennett Amendment incorporated into Title VII the Equal Pay Act's affirmative defenses, that the "very notion" of an affirmative defense "suggests" that "the party receiving its benefit be required to prove it." *Denny v. Westfield State College,* 669 F.Supp. at 1156. The problem with the *Denny* court's approach is that it overlooks why the Equal Pay Act defenses are "affirmative defenses" in the first place. In *Corning Glass Works,* 417 U.S. at 196–97, 94 S.Ct. at 2229, the Court concluded that the Equal Pay Act defenses were affirmative defenses because Fair Labor Standards Act exemptions traditionally had been treated as affirmative defenses on which employers bore the burden of proof. By contrast, though, in Title VII cases, the burden of proof traditionally has remained at all times on the plaintiff. Under Title VII, the burden of proof (persuasion) shifts to the employer only when there first has been some showing that sex was at least a substantial factor in the challenged action. *See Price Waterhouse v. Hopkins.* Similarly, if gender is asserted to be a bona fide occupational qualification (bfoq) within the meaning of § 703(e), the Supreme Court has "assumed it is the employer who must show why it must use gender as a criterion in employment." *Price Waterhouse v. Hopkins,* —— U.S. at ——, 109 S.Ct. at 1789. A *prima facie* case under the Equal Pay Act does not implicate sex to the degree of a mixed-motive or bfoq case under Title VII, so there is no justification to shift the burden of proof to the employer under Title VII.

The Bennett Amendment incorporated the Equal Pay Act's defenses into Title VII, not its burden of proof scheme. Under the Equal Pay Act's unique history, defenses or exceptions to liability are treated as affirmative defenses. Title VII does not share that history, and indeed has a somewhat different history in that regard. So while the defenses must be treated similarly in substantive terms, *County of Washington v. Gunther,* 452 U.S. at 170–71, 101 S.Ct. at 2248–49, they can be treated differently for burden of proof purposes.

The Eighth Circuit also has held that the burden of proof under the Equal Pay Act is "identical to that in a sex discrimination case under Title VII." *Floyd v. Kellogg Sales Co.,* 841 F.2d at 229 n. 2 (interpreting *McKee v. Bi-State Development Agency,* 801 F.2d at 1018–19). In *McKee* a plaintiff brought suit under both Title VII and the Equal Pay Act. A jury found for the plaintiff on the Equal Pay Act claim, rejecting the employer's defense that the wage differential was due to a factor other than sex—the male employee's ability to supervise.[10] But the trial court rejected the plaintiff's parallel Title VII claim, concluding that the employer had proffered a legitimate, nondiscriminatory reason for the difference (supervisory ability) and that McKee had not suffered discriminatory treatment. *Id.* at 1016.

The court of appeals reversed, reasoning that the jury verdict in favor of McKee was inconsistent with the district court's denial of the Title VII claim. *Id.* at 1019.[11] In

---

**10.** The "ability to supervise" seems more appropriately to be part of a plaintiff's *prima facie* case. That is, it goes to the equality of work, not a justification for paying different wages.

**11.** The *McKee* court may have missed the real inconsistency between the jury's Equal Pay Act verdict and the district court's Title VII decision. A successful Equal Pay Act claim demands that a plaintiff show a difference in her job's pay and the compared job's pay, i.e., discrimination. *See Corning Glass Works,* 417 U.S. at 195, 94 S.Ct. at 2228. Since the jury in *McKee* found an Equal Pay Act violation, it must have found a disparity (i.e., discrimination, but not necessarily intentional) in pay. The district court, however, found "that McKee had not suffered dis-

criminatory treatment." That is totally at odds with the Equal Pay Act finding.

The court in *McKee* also relied on *Orahood v. Board of Trustees,* 645 F.2d 651, 654 n. 3 (8th Cir.1981), in equating the burden of proof scheme under the Equal Pay Act with Title VII's burden of proof. But the cited portion of *Orahood* says only that Equal Pay Act "standards" apply to a claim for unequal pay for equal work, relying on the Ninth Circuit's decision in *Gunther v. County of Washington,* 623 F.2d at 1321, which holds only that "an equal work theory will provide the most practical method of establishing a prima facie case of wage discrimination." The Ninth Circuit there did not say that the ultimate burden of proof or its allocation under Title VII was changed (al-

other words, the court of appeals apparently believed that an employer's failure on its Equal Pay Act burden of proof established unequivocally that intentional sex discrimination was the reason for disparate treatment. We disagree.

The burden of proof determines the risk of nonpersuasion. Its significance is limited to those cases in which the trier of fact is left in doubt. *McCormick on Evidence*, § 336 p. 947. If the trier is in doubt, it must decide against the party bearing the burden of proof. *Id.* Failing to meet a burden of proof, however, does not establish anything more than that the trier of fact cannot conclusively decide the matter. A finding of Equal Pay Act liability, then, means only that the employer failed to satisfy its burden of proof. Thus, a successful Equal Pay Act claim is not inconsistent with a finding that the employer did not intentionally discriminate because discriminatory intent is not an element of an Equal Pay Act claim. *Brewster v. Barnes*, 788 F.2d at 993 and n. 13; *Peters v. City of Shreveport*, 818 F.2d at 1154 n. 3, 1162; *Grove v. Frostburg Nat'l Bank*, 549 F.Supp. at 938 n. 10. It is possible that a plaintiff could fail to meet its burden of proving a Title VII violation, and at the same time the employer could fail to carry its burden of proving an affirmative defense under the Equal Pay Act.

Finally, there are the EEOC regulations. The regulations provide that "[i]n situations where the jurisdictional prerequisites of both the [Equal Pay Act] and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e [sic] *et seq.*, are satisfied, any violation of the Equal Pay Act is a violation of Title VII." 29 C.F.R. § 1620.27. This became effective August 20, 1986, 51 Fed.Reg. 29,816, but initially was proposed in September 1981 (as § 1620.16). 46 Fed.Reg. 43,848, 43,849. (Initially, the responsibility and authority for enforcing the Equal Pay Act was with the Department of Labor. In 1979 it was transferred to the EEOC. 51 Fed.Reg. 29,-816.)

According to the EEOC, § 1620.27 was intended to cover the subject matter included in the Department of Labor regulations found at 29 C.F.R. §§ 800.160–800.162, "and like those sections [was supposedly intended to] describe the relationship of the Equal Pay Act with other laws." 46 Fed. Reg. 43,849. Those prior Department of Labor regulations stated in relevant part:

> The provisions of various State or other equal pay laws may differ from the equal pay provisions set forth in the Fair Labor Standards Act. There is also other Federal legislation which deals broadly with discrimination by employers against individuals because of sex including discrimination on such grounds with respect to compensation for employment (see Civil Rights Act of 1964, 78 Stat. 241, Title VII). Where any such legislation and the equal pay provisions of the Fair Labor Standards Act both apply the principle established in section 18 of the latter Act will be controlling. No provisions of the Fair Labor Standards Act will excuse noncompliance with any State or other law establishing equal pay standards higher than the equal pay standards provided by section 6(d) of the Fair Labor Standards Act. On the other hand, compliance with other applicable legislation will not excuse noncompliance with the equal pay provisions of the Fair Labor Standards Act.

29 C.F.R. § 800.160 (1981). It is apparent that the EEOC's new regulations (§ 1620.-27) go much further than the Department of Labor's. In fact, § 1620.27 appears in all respects to be new as of 1981; and it looks to be a response to the Supreme Court's decision in *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, which was decided three months before the EEOC's initial proposed regulations, rather than a simple rephrasing of the Department of Labor regulations. The new regu-

though it did elsewhere). In fact, the Eighth Circuit's previous decision in *Strecker v. Grand Forks County Social Service Board,* 640 F.2d 96, 99 n. 1 (8th Cir.1981) (en banc), expressly recog-

nizes the *differences* between the Equal Pay Act and Title VII, and acknowledges that a plaintiff bears the burden of persuasion under Title VII.

lations now seem to make the two acts co-extensive.[12]

Ordinarily, great deference is owed to the construction of a statute by those charged with its execution. However, when it varies from prior policy and no new legislative history has been introduced in support of the change, an agency interpretation is not entitled to great deference. *General Electric Co. v. Gilbert,* 429 U.S. 125, 143, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976); *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 76 n. 11, 97 S.Ct. 2264, 2272–73 n. 11, 53 L.Ed.2d 113 (1977). In this case, there has been a change from the previous regulations, and there was no legislative history or explanation to support the change; thus, we do not think the EEOC regulations should be accorded their normal degree of deference. Further, we find the EEOC's interpretation at odds with the long-standing interpretation of Title VII requiring a finding of discriminatory intent.

In sum, the Equal Pay Act and Title VII, although similar, are nonetheless distinct. They remain separate as to the proof required and as to the allocation of the parties' burden of proof. We thus will follow the lead of those courts holding that a finding of Equal Pay Act liability, without more, will not lead automatically to liability under Title VII.

### IV.

We conclude that the district court's finding that the VSO and VSOA jobs are substantially equal was not clearly erroneous. However, there may be a factor other than sex which explains the disparity in pay between those jobs.[13] For that reason, we must remand the case for further findings on the affirmative defense issue. We also must remand as to the Title VII aspects of the case (both as to Fallon and the class) for more explicit findings on intentional discrimination. Circuit Rule 36 shall not apply.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.

---

12. In this respect, the new regulation seems to be at odds with the EEOC's express disavowal of any belief that the two acts are co-extensive. 51 Fed.Reg. 29,819. The EEOC says that any violation of the Equal Pay Act is a violation of Title VII. 29 C.F.R. § 1620.27. This makes the acts co-extensive. By focusing only on the fact that both statutes prohibit sex-based wage discrimination, 51 Fed.Reg. 29,819, the regulation ignores and glosses over important long-standing differences between those acts regarding proof required and allocating the burden of proof. So while both acts target the same thing, they employ different means to achieve their purpose, and they remain separate.

13. Because we do not affirm as to the State's Equal Pay Act liability, we do not reach the State's argument challenging the district court's award of liquidated damages under the Equal Pay Act.