**Mildred SOTO, Plaintiff–Appellee, Cross–Appellant,**

**v.**

**ADAMS ELEVATOR EQUIPMENT COMPANY, Defendant–Appellant, Cross–Appellee.**

**Nos. 90–1333, 90–1335.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1991.

Decided Aug. 22, 1991.

Ernest T. Rossiello (argued), Chicago, Ill., for plaintiff-appellee, cross-appellant.

Richard H. Schnadig (argued), Bruce R. Alper, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellant cross-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

A jury found that Adams Elevator Equipment Company (Adams) had violated the Equal Pay Act by paying Mildred Soto less than a similarly situated male employee and by retaliating against her after she brought suit regarding the wage discrimination. In this appeal, Adams seeks reversal of the district court judgment denying its motion for judgment notwithstanding the verdict on the wage discrimination claim and awarding statutory liquidated damages on that claim. Ms. Soto's cross-

appeal seeks reversal of the district court judgment that she could not recover legal damages on the retaliation claim. Both parties challenge the court's calculation of attorney's fees. For the reasons set forth in this opinion, we reverse in part the judgment of the district court.

## I

## BACKGROUND

### A. *Statutory Background*

The Equal Pay Act (EPA or the Act) prohibits employers from paying similarly situated employees differently on the basis of sex:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

29 U.S.C. § 206(d)(1). The Act also prohibits retaliation, making it "unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." *Id.* § 215(a)(3).

Civil liability for both discrimination and retaliation is provided by section 216(b), which reads in pertinent part:

Any employer who violates the provisions of section 206 ... shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be,[1] and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) ... shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) ... including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

*Id.* § 216(b). In a suit under section 216(b), a district court has discretion to decline to award part or all of the statutory liquidated damages if an "employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith" and based on "reasonable grounds for believing that his act or omission was not a violation" of the statute. *Id.* § 260. A successful plaintiff in a section 216(b) action is entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* § 216(b).

### B. *Facts*

Adams is an Illinois-based manufacturer of replacement parts for elevators and escalators. Ms. Soto, a high school graduate, began working for Adams as a Production Control Clerk on February 26, 1981. She later held two other positions in Adams' Production Control Department: Production Planner and Inventory Analyst. In these positions, her responsibilities included maintaining suitable inventory levels and preparing reorder requisitions.

In October 1985, Adams' Senior Buyer resigned. Ms. Soto applied for the position, but was initially turned down for the promotion. However, she soon began helping out in Purchasing on a part-time basis and was transferred to Purchasing in February 1986. Allegedly because of her lack of purchasing experience, she did not re-

---

**1.** The Act further provides that, "[f]or purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of this subsection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this chapter." 29 U.S.C. § 206(d)(3).

ceive an immediate salary increase at the time of her transfer. The parties sharply dispute whether Ms. Soto was made a Senior Buyer or merely a Buyer at the time of the transfer. However, both her February 1986 status change form and her March 1986 employee evaluation form list Ms. Soto as a Senior Buyer. *See* Def.Exs. 25, 27. In July 1987, without notifying her, Adams changed Ms. Soto's job title on the company's internal records from Senior Buyer to Buyer. *See* Def.Ex. 1.

Approximately one week earlier, Adams hired Randy Everett as a Senior Buyer. At the time of his appointment, Everett had a college degree, four years' purchasing experience, and eight years' production experience. His initial salary was $510 per week; Ms. Soto's salary was $432 per week at that time. Everett was responsible primarily for purchasing raw materials such as stainless steel, while Ms. Soto purchased items ranging from precious metals to customized parts to routine office supplies. During the second half of 1987 and all of 1988, Everett was responsible for purchases totaling $1,950,709; Ms. Soto was responsible for purchases totaling $1,439,440 for the same period. *See* Def.Ex. 72.

In September 1988, Ms. Soto learned for the first time that Adams was paying her less than Everett. (Her salary at the time was $450 per week; Everett's was $551 per week.) Shortly thereafter, without indicating that she knew of the wage disparity, Ms. Soto requested a salary increase from Adams' Vice President, Mike Weber. On October 12, 1988, Ms. Soto met with Weber and Personnel Manager Sandra Ward. Weber reminded Ms. Soto that she had not received a pay increase at the time of her initial transfer to Purchasing because of her lack of relevant experience. Ms. Soto finally told Weber that she had learned that she was being paid considerably less than Everett. Weber then asked Ms. Soto if she wanted "equity," and she replied affirmatively. Tr. of June 1, 1989 at 563. He promised to give Ms. Soto an answer the following Monday, but failed to do so. On October 25, 1988, Ms. Soto filed this suit against Adams under the EPA.

At trial, Ms. Soto claimed that she began to be treated differently at work after she filed the suit. In February 1989, her supervisor, Roy Lee, refused to let her leave work early to assist her young children, who were locked out of their home in freezing weather because they had forgotten their house key at school. Approximately one month later, Ms. Soto and Lee had a confrontation after she learned that someone had complained to top company officials about janitorial services for which she had contracted. Ms. Soto and Lee also had a disagreement when they met to discuss her February 1989 evaluation. Prior to the lawsuit, Lee, in February 1988, had signed her most recent evaluation, which still listed her as a Senior Buyer. In February 1989, however, Ms. Soto noticed that her evaluation now listed her as a Buyer. She pointed this out to Lee, who indicated that "he couldn't explain it, that that was management's decision." *Id.* at 590. Lee then "brought up the lawsuit. He said that I had done this to myself, that it wasn't his doing...." *Id.*

When Ms. Soto learned in approximately December 1988 that Adams was contending that she had been a Buyer rather than a Senior Buyer, she attempted to locate company files that would document that her supervisors had known that she was in fact a Senior Buyer. In February 1988, Lee and Weber had approved an order for a business card for Ms. Soto with the Senior Buyer job title. The paperwork for the order was contained in a file that normally was kept in a cabinet near Ms. Soto's desk. Ms. Soto discovered that the file was missing from the cabinet, but she eventually learned that Weber had the file in his office. When he gave her the file, it contained some of the documents, but not the art work with her name and job title.

After she filed suit, Ms. Soto also began to sense that her co-workers were isolating her. She did not receive an invitation to the annual company Christmas party, and no one acknowledged her birthday even though, as was customary at Adams, she brought in a cake to share with other employees. Ms. Soto testified that her experi-

ences at Adams after she filed suit affected her seriously:

> I cried almost every night on the way home from work, after the events in the office. I couldn't sleep at night. I was irritable. I couldn't concentrate on my work in the office. In two months I lost 20 pounds, because I just couldn't eat, I was nervous all the time.

*Id.* at 586.

### C. District Court Proceedings

Ms. Soto initially claimed that Adams had violated the EPA by paying her less than Everett for substantially similar work. She later amended her complaint to add a retaliation count.[2] Her amended complaint also claimed that Adams had violated 42 U.S.C. § 1981 by discriminating and retaliating against her because of her Hispanic ancestry. The section 1981 claims were based on the same facts alleged in regard to the EPA claims.

After a four-day trial, the jury returned a verdict in favor of Ms. Soto on the EPA claims.[3] The jury awarded Ms. Soto $7,648 for back wages on the wage discrimination count and $43,000 in damages on the retaliation count.

Adams moved for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. The district court denied this motion as to the EPA wage claim. Mem. op. at 5–6. Under 29 U.S.C. § 216(b), the court awarded liquidated damages equal to the amount of lost wages; despite its discretionary authority under section 260 to refuse its discretionary authority under section 260 to refuse to award liquidated damages, the court found that Adams had not carried its burden of demonstrating good faith and a reasonable belief that it had not been violating the law. Mem. op. at 5–6.

The court granted Adams' motion for JNOV on the retaliation claim. The court rejected Ms. Soto's contention that the broad language of the second sentence of 29 U.S.C. § 216(b)[4] authorized monetary relief other than lost wages (and liquidated damages) for an EPA retaliation violation. Mem. op. at 3. Citing cases from this and other circuits[5] that had interpreted similar language in the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(b), as limiting recovery to lost wages, the district court refused to read section 216(b) more broadly. Mem. op. at 3–4. The court reasoned that the statutory liquidated damages provision was sufficient to deter employers from engaging in retaliatory conduct. *Id.* at 4. The court found that, after Ms. Soto had filed her suit, she "received a wage increase equal to that of defendant's other employees and subsequently quit to accept a higher-paying job. Plaintiff thus cannot prove any damages for lost wages under her retaliation claim." *Id.* at 5.

---

**2.** Ms. Soto's second amended complaint claimed that Adams had "retaliated" against her

> by demoting her from the position of Senior Buyer to Buyer. In addition thereto, defendant has (a) harassed, annoyed and intimidated plaintiff with respect to the terms and conditions of her employment since she has filed this suit by removing from its records certain evidence with regard to documentation for the purchase order for her business cards as "Senior Buyer", thereby denying her equal protection under the law; and, (b) repudiated statements made in its own personnel files concerning her job status in a bad faith endeavor to vex, harass and intimidate the plaintiff into foregoing her rights and defeat her claim of employment discrimination.

R. 36 at 2 (¶ 5).

**3.** The jury also returned a verdict in favor of Adams on the section 1981 claims. The section 1981 verdict is not challenged in this appeal.

**4.** "Any employer who violates the provisions of section 215(a)(3) ... shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) ... *including without limitation* employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis supplied).

**5.** *Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684 (7th Cir.), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982); *Naton v. Bank of California,* 649 F.2d 691 (9th Cir.1981); *Slatin v. Stanford Research Inst.,* 590 F.2d 1292 (4th Cir.1979); *Vazquez v. Eastern Air Lines, Inc.,* 579 F.2d 107 (1st Cir.1978); *Dean v. American Sec. Ins. Co.,* 559 F.2d 1036 (5th Cir.1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Eng'g Co.,* 550 F.2d 834 (3d Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).

Even though the court had instructed the jury that punitive damages were not available under the Act, the court interpreted the jury's verdict on this claim as a punitive damages award. *See id.* at 4. The court therefore held that Ms. Soto "was not entitled to any damages on her retaliation claim as a matter of law." *Id.* at 5.

Ms. Soto sought an attorney's fee award authorized by section 216(b). At the attorney's fee hearing, her attorney informed the court that Ms. Soto was claiming nothing for the 3.3 hours spent on the section 1981 claim. Ms. Soto claimed 249.3 hours for the rest of the case, at a base rate of $170 per hour. She requested an adjustment to $190 per hour to reflect the contingent fee payment arrangement as well as inflation during the two-year period between the initiation of the case and the anticipated receipt of the fees. Adams' attorney did not challenge the number of hours or the base rate, but opposed the requested enhancement. Furthermore, because Ms. Soto had prevailed only on the EPA wage discrimination claim, Adams contended that the court should discount the award to reflect Ms. Soto's limited success.

The court determined that, based on 249.3 hours expended and a base rate of $170 per hour, the lodestar[6] was $42,381. The court refused to discount the award due to Ms. Soto's limited success because it interpreted Seventh Circuit precedent as emphasizing "the time expended and an appropriate hourly rate as opposed to a correlation, per se, between the results achieved and the money expended." Tr. of Jan. 30, 1990 at 12. The court also rejected Ms. Soto's requested enhancement for inflation and the contingent fee nature of the

action. The attorney's fee award thus remained at the lodestar amount.

## II

## ANALYSIS

### A. *EPA Wage Discrimination Claim*

#### 1. JNOV

■ To establish a *prima facie* case of wage discrimination under the EPA, "a plaintiff must show: (1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions." *Fallon v. Illinois,* 882 F.2d 1206, 1208 (7th Cir. 1989). Actual job performance and content, not job titles, are key. "Whether two jobs require equal skill, effort, and responsibility ... is a factual determination." *Id.* Differences in responsibility must be substantial to be significant in the EPA context. *Id.* at 1209.

■ If an EPA plaintiff establishes a *prima facie* case, the burden shifts to the defendant employer to provide evidence of any of the statutorily based affirmative defenses by showing that the pay disparity results from "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *see Fallon,* 882 F.2d at 1211. For example, the *Fallon* court observed that "[e]mployers may prefer and reward experience, believing it makes a more valuable employee, for whatever reason. And it is not our province to second-guess employers' business judgment." *Id.* at 1212 (citations omitted).[7]

---

**6.** "Lodestar" is the term often applied to the product of hours reasonably expended multiplied by reasonable hourly rate. *Eddleman v. Switchcraft, Inc.,* 927 F.2d 316, 318 (7th Cir. 1991).

**7.** *See also Covington v. Southern Illinois Univ.,* 816 F.2d 317, 323–24 (7th Cir.) (male professor's education and teaching experience may be considered as factors other than sex in justifying wage disparity), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 101 (1987); *Craft v. Me-*

*tromedia, Inc.,* 766 F.2d 1205, 1210 (8th Cir. 1985) (district court did not err when it "concluded that the weight of the evidence was not contrary to the jury's finding that [anchorman's] higher salary was based on permissible factors such as his education in broadcasting, his greater experience in major television markets, and his established identity with Kansas City viewers"), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

In this appeal, Adams contends that the district court erred in denying its motion for JNOV on the wage discrimination claim because "Everett's buying responsibilities were qualitatively and quantitatively greater and different than Plaintiff's." Appellant's Br. at 13. Adams points to Everett's larger total purchases and to the greater skill allegedly required to purchase raw materials compared to some of the items Ms. Soto purchased. Furthermore, Adams argues, even if the jury could reasonably find that Ms. Soto and Everett performed substantially similar jobs, Adams was entitled to JNOV because Everett had more formal education and greater relevant experience than did Ms. Soto. According to Adams, because "experience, not sex, was the motivating factor behind any pay differential, Adams successfully rebutted Plaintiff's *prima facie* showing of discrimination if she made one at all." *Id.* at 19.

Our task in this appeal is not, however, to determine whether Ms. Soto established each element of her *prima facie* case or whether Adams presented sufficient evidence of an affirmative defense. Rather, our task is that outlined by the court in an ADEA case, *Hybert v. Hearst Corp.,* 900 F.2d 1050, 1054 (7th Cir.1990):

> After a trial on the merits, ... the question of whether Hybert adequately made out the elements of a *prima facie* case fall away, and the operative issue is simply whether, viewing the evidence in its totality, Hybert sufficiently proved that

age was a determining factor in Hearst's decision to terminate him.[8]

We thus must review the entire record, viewing the evidence "and all reasonable inferences that can be drawn from it, in the light most favorable to the prevailing party," to determine whether the jury reasonably could have believed that Adams violated the EPA by paying Ms. Soto less than Everett. *Id.* at 1051 n. 1. "Ultimately, we must determine whether there was substantial evidence to support the jury verdict." *Morales v. Cadena,* 825 F.2d 1095, 1099 (7th Cir.1987). In doing so, we cannot substitute our view of witness credibility for that of the jury. As the court noted in *Hybert,* "we are particularly careful in employment discrimination cases to avoid supplanting our view of the credibility or weight of the evidence for that of both the jury (in its verdict) and the judge (in not interfering with the verdict).... " 900 F.2d at 1054.

With these principles in mind, we cannot say that the district court erred in denying Adams' motion for JNOV on the EPA wage discrimination claim. The jury verdict implicitly rejected both conclusions that Adams proffers: (1) that Everett and Soto did not perform substantially similar jobs and (2) that Everett's college education and prior purchasing experience, rather than his sex, explained his higher salary. The jury heard substantial evidence that Ms. Soto's purchasing responsibilities, which included ordering customized parts, required at least as much skill and effort as did Everett's responsibilities. For example,

---

The court in *Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251 (7th Cir.1985), observed in dicta that "the Equal Pay Act looks to the similarity of the actual duties involved, and does not turn on differences in job descriptions, *prior training,* or other factors." *Id.* at 1260 (emphasis supplied). However, as the court noted in *Covington,* the legislative history of the EPA does support the conclusion that differences in experience and training are available affirmative defenses in an EPA suit. *See* 816 F.2d at 323 n. 9 (citing House Comm. on Equal Pay Act of 1963, H.R.Rep. No. 309, 88th Cong., 1st Sess. 3, *reprinted in* 1963 U.S.Code.Cong. & Admin.News 687, 689).

**8.** *Accord Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1154 (7th Cir.1989); *cf. United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S.

711, 713–14, 103 S.Ct. 1478, 1480–81, 75 L.Ed.2d 403 (1983) ("Because this [Title VII race discrimination] case was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a prima facie case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination *vel non.*") (footnote omitted). *But see EEOC v. Delaware DHSS,* 865 F.2d 1408, 1413–16 (3d Cir.1989) (EPA case applying *prima facie/*affirmative defense analysis in reversing district court's grant of JNOV); *cf. Bailey v. Northern Indiana Pub. Serv. Co.,* 910 F.2d 406, 410–11 & n. 3 (7th Cir.1990) (section 1981 case using *prima facie* analysis but noting that result would be the same under *Hybert* approach).

William Judges, who served for a time as Ms. Soto's supervisor in Adams' Purchasing Department, testified that "[t]he skill and effort required by [Ms. Soto] to purchase, for instance, custom components, would be much greater than the skill required to purchase raw materials such as metal stock," which made up much of Everett's purchases. Tr. of June 1, 1989 at 491. Judges also testified that many of the items that Everett purchased, including metal stock, were catalog items purchased from middlemen rather than from the original producers.[9] The jury also could reasonably have determined that Ms. Soto's experience at Adams, including more than one year in the Purchasing Department prior to Everett's arrival, counterbalanced his additional formal education and experience outside the firm.[10]

**9.** Adams contends that no reliance should be placed on Judges' testimony regarding the comparative responsibilities of Ms. Soto and Everett because Judges worked at Adams for only ten months and never worked with Everett. However, Judges left Adams shortly before Everett was hired, and Adams does not contend that the purchasing system changed significantly in the interim. Therefore, his testimony was relevant, and Adams' contention goes only to the weight that the jury should have placed on the testimony. As we have already noted, our task in this appeal is not to reweigh properly admitted evidence.

**10.** In arguing that experience is a key legitimate factor to justify pay disparities, Adams cites *Fallon v. Illinois,* 882 F.2d 1206, 1212 (7th Cir. 1989); *Wu v. Thomas,* 847 F.2d 1480 (11th Cir. 1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989); *Covington v. Southern Illinois University,* 816 F.2d 317 (7th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 101 (1987); and *Schutz v. Western Publishing Co.,* 609 F.Supp. 888, 906 (N.D.Ill.1985). However, in both *Wu* and *Covington,* the court affirmed denial of EPA relief, and the district court in *Schutz* itself denied such relief. Thus, none of these three cases supports the proposition that this court should reverse a district court's denial of a JNOV motion and upset a jury verdict in favor of an EPA plaintiff just because the jury could have decided that Adams paid Everett more than Ms. Soto because of his experience. *See King v. Board of Regents of Univ. of Wisconsin Sys.,* 898 F.2d 533, 538 (7th Cir.1990) (district court should deny JNOV motion when "reasonable persons may reach different conclusions").

## 2. Liquidated damages

Adams also contends that the district court erred in granting Ms. Soto statutory liquidated damages on the EPA wage discrimination claim. Liquidated damages are required under 29 U.S.C. § 216(b) unless the "employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith" and based on "reasonable grounds for believing that his act or omission was not a violation" of the statute. *Id.* § 260.[11] When, as in this case, a district court concludes that the defendant has not carried its burden under section 260, we shall not reverse the award of liquidated damages absent an abuse of discretion. *See Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 308 (7th Cir.1986).

The procedural posture of *Fallon* also differs from that of this case. In *Fallon,* a district court following a bench trial had found Illinois liable for violating the EPA. The district court had rejected the State's proffered affirmative defense that Veterans Service Officers (at the time of suit all males) could be paid more than Veterans Service Officer Associates (at the time of suit all females) because the former were themselves all wartime veterans. *See* 882 F.2d at 1207, 1212. This court concluded that the district court had "prematurely rejected the State's asserted affirmative defense" by relying on an inapposite precedent. *Id.* It thus remanded the case to the district court for additional findings. We do not believe that, on the basis of *Fallon,* we may conclude that the *jury's* verdict in Ms. Soto's case was incorrect as a matter of law.

Similarly, on the record before us, we cannot say that the district court abused its discretion in denying Adams' motion for a new trial on the EPA wage discrimination claim. *See General Foam Fabricators, Inc. v. Tenneco Chems., Inc.,* 695 F.2d 281, 288 (7th Cir.1982) (denial of motion for new trial will not be reversed absent "'exceptional circumstances showing a clear abuse of discretion[ ]'") (quoting *Stinebower v. Scala,* 331 F.2d 366, 367 (7th Cir.1964)); *accord Fleming v. County of Kane,* 898 F.2d 553, 559 (7th Cir.1990).

**11.** *See also EEOC v. Madison Community Unit School Dist. No. 12,* 818 F.2d 577, 586 (7th Cir.1987) ("to avoid double damages the defendant must prove that he was acting in the sincere and reasonably grounded belief that his conduct was lawful, and if he proves this the district court 'may, in its sound discretion'—not must—award only single damages") (quoting 29 U.S.C. § 260).

Although the district court rejected in a rather conclusory manner Adams' contentions regarding its good faith and reasonable belief of lawful behavior, we cannot say that the court abused its discretion. Ms. Soto presented evidence that Adams had changed her job title from Senior Buyer to Buyer on internal company documents almost immediately after it hired Everett as a Senior Buyer at a considerably higher salary than hers. She also testified that Adams destroyed evidence of her supervisors' approval of her Senior Buyer business card. Job titles are not dispositive under the law. Nevertheless, these actions may indicate that Adams realized it would face EPA liability if it paid a male employee more than a female employee for doing substantially similar work. The award of liquidated damages therefore must be affirmed.

## B. *EPA Retaliation Claim*

Ms. Soto contends that Adams should have been barred from seeking JNOV on this issue because its motion for a directed verdict did not indicate the specific legal grounds later raised in the JNOV motion (that damages other than lost wages are unavailable under the Act). *See* Appellee's Br. at 39 (citing Fed.R.Civ.P. 50(a), (b)). In an oral directed verdict motion, Adams' counsel had argued that Ms. Soto failed to prove that Adams "took adverse action against her because of her filing this lawsuit." Tr. of June 2, 1989 at 732. Counsel further argued that "[t]he kinds of things that she has talked about have been minutia, not really regarded as adverse employment action under the law." *Id.* at 733. In this appeal, Adams contends that its "succinct argument sufficiently set forth the Company's position that Plaintiff had shown neither retaliatory animus nor ac-

tionable injury." Appellant's Reply Br. at 10.

We find it difficult to read Adams' factually oriented directed verdict motion as foreshadowing the legal argument that damages other than lost wages are not available for a claim of retaliation under the EPA. There thus is some force to Ms. Soto's procedural point. We need not, however, rest our decision on this ground. The district court's conclusion that the EPA's retaliation provisions do not authorize damages other than lost wages and liquidated damages preceded this court's contrary holding in *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 112 (7th Cir.1990). The plaintiff in *Travis* had alleged retaliation in violation of section 215(a)(3).[12] A jury awarded her $45,500 in punitive damages and $35,000 in compensatory damages for emotional distress and other injuries. *Id.* at 111. The court in *Travis* upheld the damages award as authorized by the 1977 amendment that had added the second sentence of section 216(b):[13] "This amendment authorizes 'legal' relief, a term commonly understood to include compensatory and punitive damages." *Id.* (citing Pub.L. No. 95–151, 91 Stat. 1252 (1977)). Moreover, the court noted, the amendment's language permitting certain specified remedies " 'without limitation' " meant that "Congress has authorized other measures of relief" as well. *Id.* The court therefore concluded that section 216(b) was sufficiently broad to support an award of compensatory and punitive damages for retaliation: "Compensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge." *Id.* at 112.

There is sufficient evidence in this record to support the jury's verdict that Adams

---

**12.** As relevant to Travis' case, section 215(a)(3) forbids retaliation for testifying in a Fair Labor Standards Act (FLSA) action. The EPA is contained within the FLSA as amended. Although Adams' counsel made a good-faith effort at oral argument to distinguish *Travis* from this case because the former was not an EPA action, we cannot accept that distinction as significant.

Travis also sued under 42 U.S.C. § 1985(2), which requires proof of conspiracy. *See* 921

F.2d at 109. The court held that her verdict could not be sustained on the basis of section 1985(2). *Id.* at 111 (citing *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972)). It therefore addressed the FLSA question that we discuss in the text.

**13.** *See supra* note 4.

retaliated against Ms. Soto for initiating this lawsuit and that the retaliation caused her injury meriting compensation.[14] For example, Ms. Soto testified that, in her February 1989 conversation with Roy Lee concerning her evaluation, Lee indicated that she was listed on the evaluation as a Buyer rather than a Senior Buyer because of the lawsuit—that she "had done this to [her]self." This remark could be interpreted as suggesting that she had been demoted from Senior Buyer to Buyer because of the lawsuit—as Ms. Soto claimed in her second amended complaint. Furthermore, the jury could have interpreted her testimony about her post-suit treatment around the firm (especially on the part of supervisors such as Lee) as evidence of Adams' retaliatory inclinations. The jury may have believed that Adams was trying to freeze her out of the firm. Finally, Adams has pointed to no evidence that would contradict Ms. Soto's testimony that she suffered sleeplessness and a significant weight loss because of her unhappiness about the way she was being treated after she brought suit. In light of this evidence and the holding in *Travis,* the district court's grant of JNOV on the retaliation claim must be reversed and the jury's verdict reinstated. *See Kolb v. Chrysler Corp.,* 661 F.2d 1137, 1140 (7th Cir.1981) ("if the trial court erroneously grants judgment notwithstanding the verdict, the appellate court may reverse and order reinstatement of the verdict of the jury").

## C. *Attorney's Fees*

### 1. Degree of success

■ Although Ms. Soto now has succeeded on her retaliation claim, this has not mooted Adams' challenge to the district court's refusal to discount the lodestar amount to reflect her degree of success, for she still failed to prevail on the section 1981 claim. A district court should "make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (attorney's fees under 42 U.S.C. § 1988).[15] Ms. Soto acknowledges that her section 1981 and EPA claims were factually related. Thus, this case appears to be the type of case in which

> the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940.

Ms. Soto contends that the district court did not abuse its discretion in refusing to decrease the fee award below the lodestar calculation to reflect her partial success. However we might have responded to that contention if Ms. Soto were still the loser on the retaliation claim, at this point in the proceedings, we must agree. The Supreme Court in *Hensley* observed that a district court's "rejection of or failure to reach certain grounds [in a case involving alternative legal theories] is not a sufficient reason for reducing a fee." 461 U.S. at 435, 103 S.Ct. at 1940.[16] The section 1981

---

**14.** Unlike the district court, we decline to assume that the jury ignored the court's instruction regarding the unavailability of punitive damages on the retaliation claim. Thus, even though punitive damages would be permissible in light of *Travis,* we interpret the jury's verdict as an award of compensatory damages only.

**15.** *See also Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941 ("the most critical factor is the degree of success obtained"); *Eddleman v. Switchcraft, Inc.,* 927 F.2d 316, 318 (7th Cir.1991) ("when the

plaintiff obtained only partial success on related claims, the district court should also consider the degree of a plaintiff's success in calculating a reasonable fee award" under 29 U.S.C. § 626(b) and 42 U.S.C. § 1988).

**16.** *See also Hensley,* 461 U.S. at 436 n. 11, 103 S.Ct. at 1940 n. 11 ("Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested."); *Jackson v. Illinois Prisoner Review Bd.,* 856 F.2d 890, 894 (7th Cir.1988) ("Claims that 'involve a common core

and EPA claims were related substantially. Moreover, Adams' counsel did not argue that the hours spent on the case—after Ms. Soto had subtracted the 3.3 hours spent on the section 1981 claim—were unreasonable. Therefore, we see no reason to reduce her attorney's fee award below the lodestar amount because of her partial success.

## 2. Inflation and contingent fee enhancements

■ In her cross-appeal, Ms. Soto challenges the district court's refusal to enhance the lodestar amount to account for inflation and to reflect the risk involved in taking the case on a contingent fee basis. We shall address each of these submissions separately.[17] First, we note that "[a]n adjustment for delay in payment is ... an appropriate factor in the determination of what constitutes a reasonable attorney's fee under § 1988." *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *see also Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716, 107 S.Ct. 3078, 3082, 97 L.Ed.2d 585 (1987). Nonetheless, because this action was relatively young when the district court determined the amount of attorney's fees, we cannot say that the court abused its discretion by its refusal to adjust the lodestar amount upwards to account for inflation. *See Clark v. City of Los Angeles*, 803 F.2d 987, 993 (9th Cir. 1986) ("while adjustments may be justified because of inflation, they are not invariably required").

■ The Court in *Delaware Valley* also addressed the other issue raised in Ms. Soto's cross-appeal. The Court rejected, as a general rule, "using the risk of loss as an independent basis for increasing an otherwise reasonable fee." 483 U.S. at 723, 107 S.Ct. at 3085; (plurality opinion). The plurality did acknowledge that some cases may justify a risk enhancement: "Before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." *Id.* at 731, 107 S.Ct. at 3089. This view was endorsed by Justice O'Connor and thus represents the Court's holding. *See id.* at 733, 107 S.Ct. at 3090 (O'Connor, J., concurring in part and concurring in the judgment); *see also Skelton v. General Motors Corp.*, 860 F.2d 250, 254 n. 3 (7th Cir.1988), *cert. denied*, — U.S. —, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *McKenzie v. Kennickell*, 875 F.2d 330, 332 (D.C.Cir.1989). Under *Delaware Valley*, Ms. Soto therefore bore the burden of convincing the trial court that she would have found it difficult to obtain representation without the likelihood of a risk enhancement. She has identified no record evidence that would support an entitlement to enhancement.

## Conclusion

For the foregoing reasons, we affirm the district court's denial of defendant Adams' motion for JNOV or a new trial on the EPA wage discrimination claim and the court's grant of statutory liquidated damages on that claim. We reverse the court's judgment striking the jury's damages award on the EPA retaliation claim and reinstate that verdict. Finally, we affirm the attorney's fee award. Ms. Soto may recover her

---

of facts or [are] ... based on related legal theories ... [such that] counsel's time will be devoted generally to the litigation as a whole' are related and compensable even if not ultimately successful.") (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940); *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir.1988) ("partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus related grounds within the meaning of *Hensley*").

17. We note, however, that these two justifications are somewhat interrelated. As the Ninth Circuit has pointed out, one of the reasons a contingent fee arrangement may justify an upward adjustment in a fee award is the existence of inflation. *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir.1986).

costs in this court.[18]

AFFIRMED IN PART AND REVERSED IN PART

---

**18.** We also direct Ms. Soto to submit within fifteen days to the clerk of this court a statement of the fees reasonably incurred in defending against Adams' appeal and in maintaining her cross-appeal. *See Ustrak v. Fairman,* 851 F.2d 983, 990 (7th Cir.1988). Even though her cross-appeal was only partially successful, it seems evident from the briefs that almost all of her attorney's time was spent on those issues on which Ms. Soto has prevailed before this court. Thus, we see no reason to discount the fees reasonably incurred in preparing for these proceedings. *See id.*