**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
**Plaintiff,**

**v.**

**GRINNELL CORPORATION, Defendant.**

**No. IP 93–923 C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 18, 1995.

Donita F. Montgomery, Alice M. Craft, Philip B. Sklover, James R. Neely Jr., E.E.O.C., Indianapolis, IN, for plaintiff.

Todd M. Nierman, Michael L. Yoder, Baker & Daniels, Indianapolis, IN, Frederick L. Schwartz, Keith Hult, Wildman Harrold Allen & Dixon, Chicago, IL, for defendant.

ENTRY

BARKER, Chief Judge.

This matter is before the Court on defendant Grinnell Corporation's motion for summary judgment. For the reasons stated below, Grinnell's motion is denied.

## I.  FACTUAL BACKGROUND

Although many of the facts in this case are contested, the following is largely undisputed. Grinnell is a manufacturing company which produces and distributes products in the waterworks industry. At its Indianapolis and Cincinnati supply facilities Grinnell sells, among other things, pipes, pipe fittings, valves, sprinkler devices, pipe hangars, backflow preventers and unit heaters.

John McFerran is the General Manager over the supply sales division of Grinnell's Indianapolis and Cincinnati facilities. As General Manager McFerran's duties include sales, personnel administration, inventory control and facility management. McFerran has sole authority to hire, fire, evaluate and set salary levels for the sales personnel at both offices.

In June, 1990, McFerran hired Joel Wesley as an inside sales representative for Grinnell's Indianapolis facility. Prior to starting with Grinnell, Wesley had over six years of sales experience in the waterworks industry, where his salary ranged from $23,000 to $26,000 per year. Wesley also had a bachelor's degree in marketing. After negotiating with McFerran, Wesley was hired on June 18, 1990, at a starting salary of $25,500.

At the time Wesley was hired, Wanda Caudill had nearly ten years of inside sales experience and was earning $20,440 at Grinnell. She started with Grinnell in September, 1980, and was promoted to inside sales in December, 1981. In the Fall of 1991 Caudill saw a check stub of Wesley's and discovered that his salary was significantly higher than hers. In a memo dated October 9, 1991, Caudill wrote to McFerran and expressed her displeasure at the pay disparity. In response, McFerran raised Caudill's pay to that of Wesley's at her next annual salary review in December, 1991.

Although Caudill was placated by her pay raise, Karen Carraway was not. Carraway was first hired by Grinnell in 1979. Since that time she has held various clerical, inventory and order entry positions. In February, 1989, McFerran promoted her to inside sales. At the time Wesley was hired, her salary was $17,071. In 1991, Wanda Caudill told Carraway that Wesley was earning over $25,000 per year. Upon learning of the pay disparity between herself and Wesley, Carraway filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC" or "the Commission"), alleging that Grinnell paid Wesley a higher salary than it paid her for performing the same work. (Charge of Discrimination, Defendant's Ex. J).

In addition to Carraway and Caudill, Grinnell employed four other female inside sales representatives at these two facilities: Anna Cooper, Jo Ann Coors, Sharyn Chandler and Melva Upchurch. Of these six, all but Coors and Chandler were internally promoted by McFerran to the inside sales position from various clerical and order entry positions existing within Grinnell. By contrast, the three male inside sales representatives—Wesley, Harry Amon and Kevin Kincaid—were hired from outside Grinnell. With notable exceptions, the male employees' prior sales experience in the waterworks industry generally surpassed that of Grinnell's female employees. Similarly, the male sales representatives generally held higher paying jobs prior to joining Grinnell as compared to their female colleagues. Because of the numerous facts involved in this case, the following chart is utilized in order to summarize the relative salary histories and job-related experience of the employees involved.

| NAME | Prior Salary | Starting Salary | Current Salary | EXPERIENCE WHEN HIRED |
|---|---|---|---|---|
| Joel Wesley | $23,000–$26,000 | $25,500 in 1990 | $26,392 as of 4/92 | Over six years of sales experience in a related field. |
| Wanda Caudill | unknown | $20,440 in 1990 | $28,546 in 1994 | Ten years at Grinnell as an inside sales representative. |
| Karen Carraway | $16,259 | $17,071 in 1989 | $22,200 as of 2/94 | Internal promotion from an order entry position. |
| Anna Cooper | $16,013 | $18,500 in 1992 | $21,000 as of 3/94 | Internal promotion from a purchasing clerk position. |
| Harry Amon | $25,000 | $24,000 in 1985 | $31,000 as of 11/92 | Over thirteen years of sales experience in the waterworks industry. |
| Jo Ann Coors | $27,000 | between $21,000–22,000 in 1987 | $27,822 in 1994 | Extensive experience as sales representative in the waterworks field. |
| Sharyn Chandler | $15,000–$18,500 | $20,000 in 1985 | between $29,000–30,000 | Significant experience as inside sales representative in a related field. |
| Kevin Kincaid | $22,900 | $23,000 in 1992 | $24,150 in 1994 | Nearly four years of sales experience in related field. |
| Melva Upchurch | unknown | $19,418 in 1989 *(began job in 1986) | $25,136 in 1994 | Promoted from a clerical position to inside sales in 1986. |

The EEOC filed its Complaint in this cause on July 19, 1993. The Commission alleges that Grinnell engaged in unlawful employment practices at its Indianapolis and Cincinnati offices under the Equal Pay Act and Title VII of the Civil Rights Act of 1964. Specifically, the Commission argues that Grinnell discriminated on the basis of sex against Karen Carraway and a class of female inside sales representatives by paying higher wages to male inside sales representatives for the performance of equal work. It now seeks *inter alia* injunctive relief, backpay and liquidated damages.

On June 15, 1994, Defendant filed its motion for summary judgment. Grinnell argues: (1) that the EEOC cannot establish a prima facie case of sex discrimination in pay under either the EPA or Title VII; and (2) that Grinnell based its salaries on factors other than sex as a matter of law. Each of these two arguments will be discussed in turn.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

█ When a summary judgment motion is made and supported by accompanying affidavits, the party opposing summary judgment may not rely on the mere allegations of his pleadings. Rather, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Waldridge v. American Hoeschst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (*quoting* Fed.R.Civ.P. 56(e)).

## III. EQUAL PAY ACT

### A. Equal Work Requirement:

█ The Equal Pay Act prohibits sex-based wage discrimination with the following language:

No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....

29 U.S.C. § 206(d)(1). To establish a *prima facie* case under this section, the Commission must show: (1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions. *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1461 (7th Cir.1994) (citations omitted); *Gibson v. American Li-brary Ass'n*, 846 F.Supp. 1330, 1335 (N.D.Ill. 1993).

█ According to Grinnell, the EEOC has failed to establish that female inside sales representatives perform equal work requiring equal skill, effort and responsibility compared to their male counterparts. Specifically, Grinnell points to portions of Carraway's deposition where she "admits" that some inside sales representatives have better skills than she does. Grinnell then concludes that because "the position of inside sales representative entails differing skill levels," the inside sales representatives do not perform equal work. We disagree.

█ In assessing whether two jobs are equal, the Court must "look to the duties actually performed by each employee, and not to his or her job description or title." *Dey*, 28 F.3d at 1461 (*citing Soto v. Adams Elevator Equip. Co.*, 941 F.2d 543, 548 (7th Cir.1991)). Those duties need not be identical, however. Rather, the "crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical." *Fallon v. State of Illinois*, 882 F.2d 1206, 1209 (7th Cir.1989) (citations omitted); *see also Gibson*, 846 F.Supp. at 1336 (work performed must be "substantially equal"). Once a plaintiff establishes this common core, the question then becomes whether any additional tasks make the jobs "substantially different." *Fallon*, 882 F.2d at 1209. These additional duties must be substantial: "to argue that *any* difference in ... responsibility renders jobs unequal is manifestly incorrect as a matter of law." *Id.* (internal quotation marks omitted) (citations omitted).

In this case, the EEOC has successfully identified issues of fact with regard to the equal work requirement. According to McFerran's deposition, for example, all inside sales representatives are expected to take telephone orders, handle customer complaints, expedite orders and provide quality customer service. (McFerran Dep., Defendant's Ex. A, at pp. 106–09). Similarly, each inside sales representatives is accountable for the same duties and responsibilities. (McFerran Dep., at p. 109; Martha Noel

Dep., Defendant's Ex. B, at pp. 34–35). Indeed, there is no hierarchy of differing levels of inside sales representatives. (McFerran Dep., Defendant's Ex. A, at p. 33). The inside sales representatives also handle a similar number of customer accounts. (McFerran Dep. at 39; Noel Dep., at pp. 24–25). From this evidence a trier of fact could reasonably conclude that Grinnell's female inside sales representatives perform the same core tasks as their male counterparts. Although there is evidence that Grinnell's more skilled sales representatives performed some extra duties, we cannot say as a matter of law the those extra duties were significant enough to make their jobs "substantially different." Accordingly, Plaintiff has established triable issues with respect to its *prima facie* case.

### B. Affirmative Defense: Factors Other than Sex

■ Once a plaintiff satisfies his or her *prima facie* case, the employer bears the burden of showing that the pay disparity is due to: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality or production; or (iv) a differential based on any other factor other than sex. 29 U.S.C. § 206(d)(1). These are affirmative defenses on which the employer bears the burden of persuasion. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–197, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Dey*, 28 F.3d at 1462; *Fallon*, 882 F.2d at 1211. Only the fourth defense, the "factors other than sex" defense, is at issue in this case. The Seventh Circuit has described this defense as a "broad catch-all exception" that contemplates an almost limitless number of factors, so long as they do not involve sex. *Dey*, 28 F.3d at 1462; *Fallon*, 882 F.2d at 1211. The factors need not be related to the requirements of the particular position in question. Nor must the reason be business-related. *Dey*, 28 F.3d at 1462. Rather, "we ask only whether the factor is bona fide, whether it has been discriminatorily applied, and in some circumstances, whether it may have a discriminatory effect." *Id.* (footnote omitted).

■ Grinnell articulates two sex-neutral factors that it claims justifies the pay disparity. First, it claims that the salaries of Wesley and Amon were higher because of their past sales experience and extensive background in the waterworks industry. In support, Grinnell argues that at the time Wesley was hired, he had over six years of inside sales experience with a company similar to Grinnell. Similarly, when Amon was hired in 1985, he had nearly thirteen years of prior sales experience in the waterworks industry, as well as a pre-existing relationship with Grinnell customers.

Many of the female inside sales representatives, by contrast, attained their positions after promotions from clerical positions within Grinnell. Carraway, for example, was an inventory clerk, invoice editor and order entry clerk for nearly ten years before McFerran promoted her in 1989. Unlike her male counterparts, she had no prior sales experience. Similarly, Anna Cooper was promoted by McFerran from a purchasing clerk position with limited prior sales experience.

In this Circuit, employers "may prefer and reward experience, believing it makes a more valuable employee, for whatever reason." *Fallon*, 882 F.2d at 1212. However, while differences in prior experience appear to explain some of the pay disparities that existed between male and female sales representatives at Grinnell, it cannot explain all of them. Specifically, there is evidence that male employees were rewarded for their prior experience while female employees were not. For example, that Grinnell rewarded Wesley for his six years of sales experience fails to explain why Wanda Caudill, who began in inside sales nearly ten years before Wesley hired on, earned over $5,000 less than Wesley. Nor does prior experience explain why Jo Ann Coors earned $1,000 less than Wesley despite having nearly thirty years of inside sales experience in the waterworks industry. Thus, although prior experience may be a legitimate sex-neutral factor, the trier of fact could reasonably conclude that it was discriminatorily applied. As a result, we find that Grinnell cannot establish as a matter of law that the wage disparity is the result of rewarding past sales experience.

■ Grinnell next attempts to explain the differential in pay among its inside sales representatives by referring to their differing salary histories. It maintains that Joel Wesley, for example, earned between $25,000 and $26,000 as an inside sales representative for Sidner Supply Company and between $23,000 and $24,000 per year as a sales representative for BBC Pump Company prior to his hiring on at Grinnell. Thus, at $25,500 per year Wesley's starting salary with Grinnell fell directly within that prior range. Similarly, Kevin Kincaid was earning $22,900 per year plus commissions in inside sales with Treaty Supply prior to joining Grinnell. When Kincaid joined Grinnell, he started at $23,000 per year. Many of Grinnell's female sales representatives, by contrast, were promoted from lower-paying clerical positions. According to Defendant, their lower pay as sales representatives is therefore justified as a function of their lower salaries before joining the company.

In our circuit, at least two cases have concluded that the non-discriminatory use of salary histories by an employer in determining salaries can constitute a legitimate sex-neutral factor. The first is *Covington v. Southern Illinois Univ.*, 816 F.2d 317 (7th Cir.1987). In that case the court considered whether a policy of maintaining an employee's old salary after a change of assignment or promotion within the university constituted a factor other than sex. The court held that it was, concluding that a "present employer should be permitted to consider the wages it paid an employee in another position unless this policy is discriminatorily applied." *Covington*, 816 F.2d at 323.

The Seventh Circuit most recently considered this issue in *Dey v. Colt Construction & Develop. Co.*, 28 F.3d 1446 (7th Cir.1994). In that case the court approved an employer's decision to compensate a newly-hired male employee nearly $5,000 more per year than a female employee with comparable responsibilities. In holding that the male's higher salary was unrelated to his sex, the court noted that the male employee had a superior educational background, that his compensation was freely negotiated, and that he was unwilling to take the new position unless he was compensated at or near his previous salary level. *See also Riordan v. Kempiners*, 831 F.2d 690 (7th Cir.1987) (court approved an employer's decision to compensate two male employees at a higher rate than a female colleague because the male employees were unwilling to take the new position unless they were compensated at their previous salary level). The court warned, however, that evidence of prior salaries "must be considered with some caution, of course, as undue reliance on salary history to explain an existing wage disparity may serve to perpetuate differentials that ultimately may be linked to sex." *Dey*, 28 F.3d at 1462; *see also Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 876 (9th Cir.1982) ("a factor like prior salary ... can easily be used to capitalize on the unfairly low salaries historically paid to women").

Although we think the issue a close one, we cannot say as a matter of law that prior salary is the key determinant underpinning Grinnell's compensation system. Jo Ann Coors was earning $27,000 per year before starting with Grinnell. Her starting salary at Grinnell, however, was somewhere between $21,000 and $22,000. (Personnel Change in Status Form, Plaintiff's Ex. N; Coors Dep. at p. 31). Significantly, Defendant plainly admits in its supporting brief that Coors and McFerran never discussed her salary history when negotiating her compensation. (Defendant's Memorandum in Support at p. 14). Thus, a trier of fact could reasonably conclude that Grinnell only rewarded male employees for their higher prior salaries while taking advantage of the lower salaries historically paid to women.[1]

In sum, the record reveals no single compensation policy that explains away every pay disparity existing within Grinnell's sales

---

1. *Cf. Brennan*, 417 U.S. at 205, 94 S.Ct at 2233 ("The [pay] differential arose simply because men would not work at the low rates paid women inspectors, and it reflected a job market in which [the employer] could pay women less than men for the same work. That the company took advantage of such a situation may be understandable as a matter of economics, but its differential nevertheless became illegal once Congress enacted into law the principle of equal pay for equal work").

division. Although past experience can explain many of the differences, it cannot explain all of them. The same is true for salary histories. It appears to the Court that McFerran employed an ad hoc system of negotiating salaries that weighed many factors, including experience, prior salary and bargaining strength. Because our review of such a method is highly fact-specific and the calculus of factors will differ as to each employee, we cannot say as a matter of law that sex played no role. Accordingly, Defendant's motion for summary judgment is denied as to Plaintiff's Equal Pay Act claim.

## IV. TITLE VII CLAIM

The Commission's second claim seeks relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* A plaintiff may assert claims based on unequal pay for equal work under both the EPA and Title VII. In order establish a *prima facie* case under Title VII, a plaintiff must demonstrate that she is female, i.e., a member of a protected class, and that the job she occupies is similar to higher paying jobs occupied by males. *Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336, 343 (4th Cir.1994); *Weiss v. Coca–Cola Bottling Co.,* 990 F.2d 333, 338 (7th Cir.1993) (female plaintiff "cannot establish a prima facie case of salary discrimination without evidence that similarly-situated males were paid more").

After the plaintiff establishes her *prima facie* case, the burden shifts to the defendant to offer a legitimate reason for the apparent discrimination. *Brinkley–Obu,* 36 F.3d at 344; *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Unlike the EPA, however, satisfaction of the *prima facie* case only serves to shift the burden of production to the defendant. *Fallon,* 882 F.2d at 1217–18; *see also St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Finally, once the defendant offers a non-discriminatory justification for the wage disparity, the burden of persuasion remains on the plaintiff to demonstrate that the proffered explanation is pretextual and that the defendant was actually motivated by discriminatory intent.[2] *Brinkley–Obu,* 36 F.3d at 344; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94.

In the instant case, the same evidence that created issues of fact with respect to Plaintiff's EPA claim also provides support for its Title VII claim. Initially, as discussed above, there is ample evidence from which a trier of fact could reasonably conclude that Grinnell's female sales representatives perform the same core tasks as their male counterparts. As a result, Plaintiff has established triable issues with respect to its *prima facie* case. The burden of production then shifts to the Defendant to proffer non-discriminatory reasons for the wage differential. Grinnell offers two: the male employees had more prior sales experience and higher prior salaries. The Commission must now come forward with sufficient evidence so that a trier of fact could reasonably conclude that Grinnell's proffered reasons are pretextual. As the Court noted in its EPA analysis, there is evidence that male employees were rewarded for their previous sales experience and higher prior salaries while Grinnell's female employees were not. Thus, a reasonable trier of fact could "infer intentional discrimination from its disbelief of the reasons put forward by the defendant and the elements of the prima facie case alone." *Loyd,* 25 F.3d at 522. Accordingly,

---

**2.** Although not at issue in this case, a plaintiff must proffer direct evidence of intentional sex discrimination in pay when comparing male and female salaries in *dissimilar* jobs. As recently stated by the Seventh Circuit:

> [T]he *McDonnell Douglas* burden-shifting scheme does not import well into an area where wage discrimination claims are based on pay differences between dissimilar jobs. The approach would inject into the liability analysis notions of comparable worth which, under prevailing statutory conditions, have been banished from our jurisprudence. A Title VII wage-discrimination plaintiff comparing wage rates in dissimilar jobs retains at all times the burden of convincing the fact finder, without resort to shifting burdens or similar procedural devices, that her employer intended to suppress her wages on account of her sex.

*Loyd v. Phillips Bros., Inc.,* 25 F.3d 518, 525 n. 6 (7th Cir.1994); *see also EEOC v. Sears, Roebuck & Co.,* 839 F.2d 302, 340–43 (7th Cir.1988); *Korzen v. Local Union 705,* 851 F.Supp. 291, 299 (N.D.Ill.1994).

Defendant's motion for summary judgment is denied as to Plaintiff's Title VII claim.

## V. CONCLUSION

For the reasons stated above, the Court DENIES defendant Grinnell Corporation's motion for summary judgment with respect to both its Equal Pay Act and Title VII claims.